**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY and | ) | |
| CONTINENTAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  07 C 6912 |
| | ) | |
| COMMERCIAL RISK RE-INSURANCE | ) | Judge Leinenweber |
| COMPANY, COMMERCIAL RISK | ) | |
| REINSURANCE COMPANY LIMITED, | ) | Magistrate Judge Keys |
| GENERAL SECURITY INDEMNITY | ) | |
| COMPANY OF ARIZONA, GENERAL | ) | |
| SECURITY NATIONAL INSURANCE | ) | |
| COMPANY, GIE COLUMBUS, SCOR, and | ) | |
| SCOR REINSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER TO PLAINTIFFS'
COMPLAINT FOR DECLARATORY JUDGMENT**

Defendants Commercial Risk Re-Insurance Company, Commercial Risk Reinsurance
Company Limited, General Security Indemnity Company of Arizona, General Security National
Insurance Company, GIE Columbus, SCOR [*sic*], and SCOR Reinsurance Company
(collectively, "SCOR" ), by and through their attorneys, state as and for their answer to
Plaintiff's Complaint for Declaratory Judgment as follows:

**NATURE OF ACTION**

1.     This is a declaratory judgment action brought by Plaintiffs against Defendants,
seeking a declaration concerning the scope of a "Commutation & Release Agreement" entered
into in 2006.

**ANSWER**:

The averments of Paragraph 1 state a legal conclusion to which no response is necessary; to the extent a further response is required, SCOR denies the averments.  Declaratory relief is neither appropriate nor warranted at this time.

## THE PARTIES

2.     Plaintiff Continental Casualty Company ("CCC") is an insurance company organized under the laws of the State of Illinois, with its principal place of business in Illinois.

**ANSWER**:

SCOR is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 2.

3.     Plaintiff Continental Insurance Company ("CIC") is an insurance company organized under the laws of the State of Pennsylvania, with its principal place of business in Illinois.

**ANSWER**:

SCOR is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 3.

4.     Defendant Commercial Risk Re-Insurance Company ("CRRC") is an insurance company organized under the laws of Vermont.  On information and belief, its principal place of business is in New York.

**ANSWER**:

SCOR admits the averments of Paragraph 4.

5.     Defendant Commercial Risk Reinsurance Company Limited ("CRRC Ltd.") is an insurance company organized under the laws of Bermuda, with its principal place of business in Bermuda.

**ANSWER**:

SCOR admits the averments of Paragraph 5.

6.     Defendant General Security Indemnity Company of Arizona ("General Indemnity") is an insurance company organized under the laws of Arizona, with its principal place of business in New York.

**ANSWER**:

SCOR admits the averments of Paragraph 6.

7.     Defendant General Security National Insurance Company ("General National") is an insurance company organized under the laws of New York, with its principal place of business in New York.

**ANSWER**:

SCOR admits the averments of Paragraph 7.

8.     On information and belief, defendant GIE Columbus is an insurance company organized under the laws of France, with its principal place of business in France.

**ANSWER**:

SCOR admits the averments of Paragraph 8.

9.     Defendant SCOR is an insurance company organized under the laws of France, with its principal place of business in France.

**ANSWER**:

SCOR denies there is a corporate entity properly known only as "SCOR". To the extent the averments in Paragraph 9 refer to SCOR S.E., SCOR admits the averments of Paragraph 9.

10.     Defendant SCOR Reinsurance Company is an insurance company organized under the laws of New York, with its principal place of business in New York.

**ANSWER**:

SCOR admits the averments of Paragraph 10.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because Plaintiffs and Defendants are citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**ANSWER**:

SCOR is without knowledge or information sufficient to form a belief as to the truth of the averments concerning the citizenship of the Plaintiffs; to the extent a further response is required, SCOR denies the averments.  The remaining averments of Paragraph 11 state a legal conclusion to which no response is required; to the extent a further response is required, SCOR denies the averments.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

**ANSWER**:

The averments of Paragraph 12 state a legal conclusion to which no response is required; to the extent a further response is required, SCOR denies venue is appropriate in this District. CNA has demanded arbitration with respect to the merits of this claim, and its choice has been accepted by SCOR.  The arbitration Panel will decide whether the Unity Fire Contracts are enforceable.  There is no case or controversy with respect to Allstate, and the Court lacks subject matter jurisdiction, so venue is not appropriate.

## BACKGROUND

### Reinsurance

13.     Under a reinsurance contract, one insurance company, known as the "ceding company" or the "cedent," purchases insurance from another professional insurer, known as the "reinsurer," in order to transfer some or all of the insured risk the cedent has assumed under its direct policies.  In this case, Plaintiffs were the ceding companies and Defendants were the reinsurers.

### ANSWER:

SCOR admits that the averments of Paragraph 13 generally describe one particular type of reinsurance contract.  SCOR denies this is a complete description of how reinsurance contracts operate.  SCOR admits that Plaintiffs were ceding companies and Defendants were the reinsurers under certain reinsurance agreements.

14.     In reinsurance parlance, a "commutation" is an agreement whereby existing reinsurance contracts are bought back and terminated.  Under the typical commutation agreement, the reinsurer pays the cedent a negotiated amount, in exchange for the cedent's agreement that particular reinsurance contracts are terminated, such that the reinsurer will have no further liability to the cedent under those reinsurance contracts.

### ANSWER:

SCOR admits that the averments in Paragraph 14 describe a form of commutation. However, SCOR denies there is a "typical" commutation agreement and denies that the remaining averments of Paragraph 14 are "typical."

### The Commutation Agreement
### Negotiated by CNA and the SCOR Companies

15.     In December 2006, CNA and the SCOR Companies entered into a "Commutation Agreement & Release" (the "Commutation Agreement").  A copy of the Commutation Agreement & Release is attached hereto as Exhibit 1.

**ANSWER**:

SCOR admits that in December 2006, CNA and it entered into a "Commutation Agreement," but denies that a true and complete copy of that Agreement is attached to the Complaint.

16.    The Commutation Agreement covered "Reinsurance Agreements," which was defined in part as reinsurance agreements or contracts of reinsurance "between the Parties, known or unknown, under which REINSURER assumes losses ceded by CNA to REINSURER…." (Ex. 1 at 3.)

**ANSWER**:

SCOR admits the Commutation Agreement contains this quoted text, but denies that the averments of Paragraph 16 fully, accurately or completely state or describe the relevant terms and conditions. The remaining averments of Paragraph 16 related to the interpretation of the Commutation are a legal conclusion to which no response is required. To the extent a further response is required, SCOR denies the averments of Paragraph 16.

17.    "Parties" was defined as "CNA and REINSURER, collectively." (Ex. 1 at 3.)

**ANSWER**:

SCOR admits the Commutation Agreement contains this text, but denies that the averments of Paragraph 17 fully, accurately or completely state or describe the relevant terms and conditions. The remaining averments of Paragraph 17 related to the interpretation of the Commutation are a legal conclusion to which no response is required. To the extent a further response is required, SCOR denies the averments of Paragraph 17.

18.    "CNA" was defined as CCC and CIC and their direct or indirect insurance subsidiaries, excluding certain specifically identified companies. (Ex. 1 at 2)

**ANSWER**:

SCOR admits the Commutation Agreement contains this text, but denies that the averments of Paragraph 18 fully, accurately or completely state or describe the relevant terms and conditions. The remaining averments of Paragraph 18 related to the interpretation of the Commutation are a legal conclusion to which no response is required. To the extent a further response is required, SCOR denies the averments of Paragraph 18.

      19.    "REINSURER" was defined as:

> SCOR Reinsurance Company, General Security National Insurance Company (f/k/a Sorema North America Reinsurance Company); General Security Indemnity Company of Arizona; Commercial Risk Re-Insurance Company, Commercial Risk Reinsurance Company Limited, GIE COLUMBUS, SCOR, Paris, France, including any of its direct or indirect non-life insurance and reinsurance subsidiaries and affiliates, including but not limited to SCOR Global P&C, but excluding Anglo-French Insurance Company, LTD., SAI-SOCIETA ASSICURATRICE INDUSTRIALE, (UK) and any of their subsidiaries.

(Ex. 1 at 3.)

**ANSWER**:

SCOR admits the Commutation Agreement contains this text, but denies that the averments of Paragraph 19 fully, accurately or completely state or describe the relevant terms and conditions. The remaining averments of Paragraph 19 related to the interpretation of the Commutation are a legal conclusion to which no response is required. To the extent a further response is required, SCOR denies the averments of Paragraph 19.

      20.    The Commutation Agreement contains a merger and integration clause. Specifically, paragraphs 1 and 3 of Article 7 of the Commutation Agreement provide that:

> This Commutation & Release Agreement shall constitute the final, complete and entire agreement between the parties as respects its subject matter, and supersedes and replaces any prior oral or written

understandings of the Parties.  This Commutation & Release Agreement may not be amended except by written amendment executed by each of the Parties.

*     *     *

This Commutation & Release Agreement supersedes any and all other negotiations, discussions, promises, commitments, agreements and understandings, whether oral or written, express or implied, or made before or contemporaneous with the execution of this Commutation & Release Agreement, between the parties with respect to the subject matter[.] All such negotiations, discussions, promises, commitments, agreements, and understandings are deemed terminated or otherwise extinguished. (Ex. 1 at 11.)

**ANSWER**:

SCOR admits the Commutation Agreement contains this text, but denies that the averments of Paragraph 20 fully, accurately or completely state or describe the relevant terms and conditions.  The remaining averments of Paragraph 20 related to the interpretation of the Commutation are a legal conclusion to which no response is required.  To the extent a further response is required, SCOR denies the averments of Paragraph 20.

21.     The Commutation Agreement was executed on behalf of all parties by December 28, 2006.  (Ex. 1 at 15-16.)

**ANSWER**:

SCOR admits the averments of Paragraph 21, but denies that a true and complete copy of that Agreement is attached to the Complaint and denies that the averments of Paragraph 21 fully, accurately or completely state or describe the relevant terms and conditions.

**The Allstate Re Contracts and the Unity Fire Contracts**

22.     At various times, CNA purchased reinsurance contracts from Allstate Insurance Company and/or its affiliates (collectively, "Allstate") under which CNA ceded, and Allstate assumed, certain reinsurance business (the "Allstate Re Contracts").

**ANSWER**:

SCOR admits that at various times CNA entered into reinsurance contracts with Allstate under which CNA ceded and Allstate assumed certain obligations.  Because the "Allstate Re Contracts" are not sufficiently identified, SCOR is without knowledge or information sufficient to form a belief as to the truth of the averments concerning those Contracts; to the extent a further response is required, SCOR denies the remaining averments in Paragraph 22.

23.     The Allstate Re Contracts were issued by Allstate.

**ANSWER**:

SCOR is without knowledge or information sufficient to form a belief as to the truth of the averments concerning the averments of Paragraph 23; to the extent a further response is required, SCOR denies the averments.

24.     CNA has not agreed to any novation whereby any of the SCOR Companies replaced Allstate under the Allstate Re Contracts.

**ANSWER**:

SCOR is without knowledge or information sufficient to form a belief as to the truth of the averments concerning the averments of Paragraph 24; to the extent a further response is required, SCOR denies the averments.

25.     At various times, CNA purchased reinsurance contracts from Unity Fire and General Insurance Company, now known as Unitrin Preferred Insurance Company ("Unity Fire") under which CNA ceded, and Unity Fire assumed, certain reinsurance business (the "Unity Fire Contracts.")

**ANSWER**:

SCOR admits that at various times CNA entered into reinsurance contracts with Unity Fire under which CNA ceded and Unity Fire assumed certain obligations.  Because the "Unity

Fire Contracts" are not sufficiently identified, SCOR is without knowledge or information sufficient to form a belief as to the truth of the averments concerning those Contracts; to the extent a further response is required, SCOR denies the remaining averments in Paragraph 25.

26.    The Unity Fire Contracts were issued by Unity Fire.

**ANSWER**:

SCOR is without knowledge or information sufficient to form a belief as to the truth of the averments concerning the averments of Paragraph 25; to the extent a further response is required, SCOR denies the averments.

27.    CNA has not agreed to any novation whereby any of the SCOR Companies replaced Unity Fire under the Unity Fire Contracts.

**ANSWER**:

SCOR is without knowledge or information sufficient to form a belief as to the truth of the averments concerning the averments of Paragraph 27; to the extent a further response is required, SCOR denies the averments..

**The Present Dispute**

28.    On its face, the Commutation Agreement does not apply to the Allstate Re Contracts or the Unity Fire Contracts.

**ANSWER**:

SCOR is without knowledge or information sufficient to form a belief as to the truth of the averments of Paragraph 28, and those averments state a legal conclusion to which no response is necessary; to the extent a further response is required, SCOR denies the averments. Certain Allstate Re Contracts and certain Unity Fire Contracts were contemplated by and included within the Commutation.

29.    The Commutation Agreement is limited to reinsurance contracts under which "REINSURER" assumes losses ceded by "CNA."

**ANSWER**:

The averments of Paragraph 29 state a legal conclusion to which no response is necessary, and do not fully, accurately or completely state or describe the relevant terms and conditions of the Commutation Agreement; to the extent a further response is required, SCOR denies the averments.  .

30.    The terms "REINSURER" and "CNA" are plain and unambiguous.

**ANSWER**:

SCOR denies that the term "REINSURER" as used in the Commutation Agreement is "plain."  The remaining averments concerning ambiguity in Paragraph 30 state a legal conclusion to which no response is necessary; to the extent a further response is required, SCOR denies the averments.

31.    Neither Allstate nor Unity Fire falls within the definitions of "REINSURER" or "CNA" under in the Commutation Agreement:

(a)    Neither Allstate nor Unity Fire was a direct or indirect subsidiary or affiliate of the SCOR Companies as of the execution date of the Commutation Agreement.

(b)    Neither Allstate nor Unity Fire was a direct or indirect subsidiary or affiliate of CNA as of the execution date of the Commutation Agreement.

**ANSWER**:

SCOR admits the averments of Paragraph 31(a).  SCOR is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 31(b).  The remaining averments of Paragraph 31 state a legal conclusion to which no response is necessary; to the extent a further response is required, SCOR denies the averments.  The averments of Paragraph 31 do not fully, accurately or completely state or describe the relevant terms and conditions of the Commutation Agreement.  Certain Allstate Re Contracts and certain Unity Fire contracts were covered by the Commutation Agreement and within the Parties' contemplation and intent.

32.    Neither Allstate nor Unity Fire was a signatory to the Commutation Agreement.

**ANSWER**:

SCOR admits the averments of Paragraph 32.  The averments of Paragraph 32 do not fully, accurately or completely state or describe the relevant terms and conditions of the Commutation Agreement.  Certain Allstate Re Contracts and certain Unity Fire contracts were covered by the Commutation Agreement and within the Parties' contemplation and intent.

33.    Neither Allstate nor Unity Fire was a party to the Commutation Agreement.

**ANSWER**:

SCOR denies the averments of Paragraph 33.  The averments of Paragraph 33 do not fully, accurately or completely state or describe the relevant terms and conditions of the Commutation Agreement.  Certain Allstate Re Contracts and certain Unity Fire contracts were covered by the Commutation Agreement and within the Parties' contemplation and intent.  Those

contracts were considered by the parties as "Reinsurance Agreements" which ceded risks directly to SCOR.

34.     Nevertheless, over the past 11 months, the SCOR Companies have claimed to owe certain responsibilities under the Allstate Re Contracts and the Unity Fire Contracts, and assert that those responsibilities were extinguished by the Commutation Agreement. Specifically, the SCOR Companies claim that the Allstate Re Contracts and the Unity Fire Contracts were terminated by the Commutation Agreement.

**ANSWER**:

SCOR denies that it claims to owe current responsibilities under the Allstate Re Contracts and the Unity Fire Contracts.  SCOR admits that it claims that certain Allstate Re Contracts and certain Unity Fire Contracts were terminated by the Commutation Agreement.  SCOR has been the direct obligor on certain Allstate Re Contracts since 1996, and on certain Unity Fire Contracts since 1991.  CNA has directly billed SCOR as the direct obligor on these contracts, and it conducted business in all respects as if SCOR was the direct obligor on those contracts until the Commutation was executed.  Those contracts were considered by the parties as "Reinsurance Agreements" which ceded risks directly to SCOR.  Those contracts were covered by the Commutation Agreement and within the Parties' contemplation and intent.

35.     As a result, over $1.7 million billed by CNA under the Allstate Re Contracts and/or the Unity Fire Contracts has gone unpaid.

**ANSWER**:

SCOR admits that CNA has attempted to submit bills directly to SCOR under certain Unity Fire Contracts and that those bills have not been paid by SCOR.  SCOR denies that CNA has attempted to submit bills to Allstate or to SCOR under any Allstate Re Contract.

36.     Under Paragraph 8 of the Commutation Agreement, the Parties agreed to submit to the exclusive jurisdiction of the state and federal courts in the State of Illinois any dispute

arising under or relating to the Commutation Agreement. Paragraph 8 also provides that Illinois law shall govern the interpretation and enforcement of the Commutation Agreement.

**ANSWER**:

The averments of Paragraph 36 state a legal conclusion to which no response is necessary; to the extent a further response is required, SCOR denies the averments. The averments of Paragraph 36 also do not fully, accurately or completely state or describe the relevant terms and conditions of the Commutation Agreement. The Commutation Agreement contemplated disputes being decided by different tribunals, including arbitrators, and CNA has demanded arbitration under certain Unity Fire Contracts which necessarily involves the same issue presented here: whether CNA can enforce the Unity Fire Contracts.

## COUNT I – DECLARATORY JUDGMENT

37.    CCC and CIC restate and reallege the allegations set forth in Paragraphs 1-36 above, as if set out in full herein.

**ANSWER**:

SCOR restates and realleges its answers to Paragraphs 1-36 as if fully set forth herein and as its answer to Paragraph 37.

38.    CCC and CIC contend that the Commutation Agreement does not apply to reinsurance contracts issued by Allstate Re, or by Unity Fire, or by any companies other than those identified as "REINSURER" under the Commutation Agreement.

**ANSWER**:

SCOR admits that CCC and CIC make the contentions described in the averments of Paragraph 38, but denies that the contentions are true or accurate.

39.    The SCOR Companies dispute the position of CCC and CIC described in Paragraph 38 above.

**ANSWER**:

SCOR admits the averments of Paragraph 39.  SCOR also has raised this dispute in the arbitration Plaintiffs have initiated involving certain Unity Fire Contracts.

40.     Pursuant to 28 U.S.C. § 2201(a), an actual controversy exists between CCC and CIC, on the one hand, and the SCOR Companies, on the other hand, respecting the scope of the Commutation Agreement.

**ANSWER**:

The averments of Paragraph 40 state a legal conclusion to which no response is required. To the extent a further response is required, SCOR denies the averments.  CNA has not accused SCOR of breaching the Commutation Agreement.  CNA has not even alleged that SCOR may potentially breach the Commutation Agreement at some point in the future.  SCOR does not contend that CNA has breached or may breach the Commutation Agreement.  Accordingly, CNA has alleged nothing more than an abstract question about the interpretation of the Commutation Agreement and seeks an advisory opinion.  With respect to the Allstate Re Contracts, CNA does not identify any amount that is due and owing.  In other words, there is no way to know whether there will ever be a claim under an Allstate Re Contract.  There is no Article III case or controversy between the parties with respect to the Commutation and declaratory relief is improper at this time.

## AFFIRMATIVE DEFENSES

Defendants Commercial Risk Re-Insurance Company, Commercial Risk Reinsurance Company Limited, General Security Indemnity Company of Arizona, General Security National Insurance Company, GIE Columbus, SCOR S.E., and SCOR Reinsurance Company state as and for their alternative affirmative defenses to CNA's claims and counts as follows:

### First Affirmative Defense: Lack of Subject Matter Jurisdiction

There is no case or controversy between CNA and SCOR with respect to the Commutation Agreement.  CNA has not accused SCOR of breaching the Commutation Agreement.  CNA has not even alleged that SCOR may potentially breach the Commutation Agreement at some point in the future.  SCOR does not contend that CNA has breached or may breach the Commutation Agreement.  Accordingly, CNA has alleged nothing more than an abstract question about the interpretation of the Commutation Agreement and seeks an advisory opinion.  With respect to the Allstate Re Contracts, CNA does not identify any amount that is due and owing.  In other words, there is no way to know whether there will ever be a claim under an Allstate Re Contract.  There is no Article III case or controversy between the parties with respect to the Commutation and this Court lacks subject matter jurisdiction over this matter.

### Second Affirmative Defense: Estoppel

SCOR became the direct obligor on the Unity Fire contracts in 1991.  SCOR became the direct obligor on the Allstate Re contracts in 1996.  Since that time, CNA has never sought judicial relief to remedy what it claims, indicates or suggests was SCOR's "improper" assumption of risks ceded under certain Unity Fire Contracts and certain Allstate Re Contracts. To the contrary, CNA conducted itself as if it understood, and acquiesced to, the fact that SCOR

was the direct obligor on those contracts. CNA submitted claims directly to SCOR. CNA accepted payment directly from SCOR. SCOR has relied on CNA's conduct for more than a decade. SCOR relied on the fact that its obligations under those contracts were covered by the Commutation Agreement. CNA should be estopped from now claiming that SCOR is not the direct obligor on the Unity Fire Contracts and on the Allstate Re Contracts.

### Third Affirmative Defense: Waiver

SCOR became the direct obligor on certain Unity Fire contracts in 1991. SCOR became the direct obligor on certain Allstate Re contracts in 1996. Since that time, CNA has never exercised any right it now claims to direct payment from Allstate Re or Unity Fire under those contracts. To the contrary, CNA conducted itself as if it understood, and acquiesced to, the fact that SCOR was the direct obligor on those contracts. CNA submitted claims directly to SCOR, CNA accepted payment directly from SCOR, and until some time after it signed the Commutation Agreement and received moneys from SCOR under that Agreement CNA never objected to SCOR's administration or payment of such claims. CNA relinquished any right it had – and there was none – to claim directly from Allstate Re or Unity Fire under certain Reinsurance Agreements. The fact that CNA has waited more than a decade to exercise what it claims is a right to direct payment from Unity Fire and Allstate Re constitutes a waiver of any such right.

### Fourth Affirmative Defense: Laches

SCOR became the direct obligor on certain Unity Fire contracts in 1991. SCOR became the direct obligor on certain Allstate Re contracts in 1996. Since that time, CNA has never sought relief from any tribunal or regulatory body of competent jurisdiction to remedy what it

now claims was SCOR's "improper" assumption of risks ceded on certain Unity Fire Contracts and on certain Allstate Re Contracts.  To the contrary, CNA conducted itself as if it understood, and acquiesced to, the fact that SCOR was legally the direct obligor on those contracts.  CNA submitted claims directly to SCOR.  CNA accepted payment directly from SCOR.  CNA's delay in seeking a judicial declaration that those contracts were not covered under the Commutation Agreement has prejudiced SCOR and it would be inequitable to grant CNA relief after it sat on its purported rights for so long.

<u>**Fifth Affirmative Defense: Failure to State a Claim**</u>

There is no case of actual controversy between CNA and SCOR with respect to the Commutation Agreement.   CNA has not accused SCOR of breaching the Commutation Agreement.  CNA has not even alleged that SCOR may potentially breach the Commutation Agreement at some point in the future.  SCOR does not contend that CNA has breached or may breach the Commutation Agreement.  Accordingly, CNA has alleged nothing more than an abstract question about the interpretation of the Commutation Agreement and seeks an advisory opinion.  The parties to this action do not have questions about their rights under the Commutation Agreement.  CNA maintains that SCOR is not a party to and is therefore not liable upon the Unity Fire Contracts or the Allstate Re Contracts.  SCOR asserts that it is no longer liable to CNA upon the Unity Fire Contracts or the Allstate Re Contracts pursuant to the Commutation Agreement.  Consequently, CNA has failed to state a cause of action under 28 U.S.C. § 2201.

**Sixth Affirmative Defense: Pending Arbitration**

CNA has demanded arbitration against Unity Fire to resolve purported disputes over the enforceability of obligations that may have been owed under certain Unity Fire Contracts. CNA's action constitutes an election of remedies to proceed in arbitration.  SCOR's defenses in that arbitration will be prejudiced by CNA's attempt to have them adjudicated in this parallel proceeding.  This matter should be stayed or dismissed pending arbitration.

**Seventh Affirmative Defense: The Commutation Agreement is Ambiguous**

The Commutation Agreement is subject to multiple, equally reasonable, interpretations. Specifically, the Commutation Agreement defines "Reinsurance Agreement" as:

> Any reinsurance agreement or any contract of reinsurance between the Parties, *known or unknown*, under which REINSURER assumes losses ceded by CNA to REINSURER…

(ART. 1, ¶ g)  The definition of "Reinsurance Agreement" does not provide that only those losses ceded under "SCOR contracts" are included.  The definition is much broader and includes *any* contract of reinsurance under which *any* loss which is ceded to and accepted by SCOR. SCOR interprets this paragraph to include Allstate Re Contracts and Unity Fire Contracts because CNA has, in fact, been directly billing losses to SCOR and SCOR has paid on those losses since 1991.  To the extent CNA offers a reasonable interpretation of the definition of "Reinsurance Contract" which is different, the Commutation Agreement is ambiguous.

**Eighth Affirmative Defense: Reformation**

To the extent the Court holds that the Commutation Agreement does not include any of the as yet unidentified Allstate Re Contracts or Unity Fire Contracts, the Commutation Agreement should be reformed to include those contracts.  There had been a meeting of the

minds between CNA and SCOR to include those contracts. Multiple written communications between CNA and SCOR confirm that the Commutation was intended to be an all-encompassing "global" commutation. Additionally, written correspondence between CNA and SCOR confirms that SCOR specifically informed CNA that the Unity Fire Contracts were to be included in the Commutation Agreement. CNA and SCOR reduced their agreement to writing. Not specifically including Allstate Re Contracts and Unity Fire Contracts in the definition of "Reinsurance Agreement" then would have been the result of a mutual mistake. Accordingly, the Commutation Agreement should be reformed to specifically include these contracts as originally contemplated by the parties.

### Ninth Affirmative Defense: Release

The Commutation Agreement specifically releases SCOR from any liability for any claim related to a Reinsurance Agreement. Allstate Re Contracts and Unity Fire Contracts are "Reinsurance Agreements" as that term is defined in the Commutation Agreement. Therefore, CNA's claims have been released, and this action is improper.

Date:  February 29, 2008

Commercial Risk Re-Insurance Company, Commercial Risk Reinsurance Company Limited, General Security Indemnity Company of Arizona, General Security National Insurance Company, GIE Columbus, SCOR S.E., and SCOR Reinsurance Company,

By:     /s/Carl H. Poedtke III
        One of their attorneys

Stephen W. Schwab    (ARDC # 6183518)
Carl H. Poedtke III     (ARDC # 6237886)
Michael C. Kasdin     (ARDC # 6283200)
**DLA PIPER US LLP**
203 North LaSalle Street
Suite 1900
Chicago, IL 60601
Tel (312) 368-4000
Fax (312) 236-7516