**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Continental Casualty Company and Continental Insurance Company, | ) ) ) | |
| Plaintiffs, | ) ) | No. 07-C-6912 |
| v. | ) ) ) | Honorable Judge Harry D. Leinenweber |
| Commercial Risk Re-Insurance Company, Commercial Risk Reinsurance Company Limited, General Security Indemnity Company of Arizona, General Security National Insurance Company, GIE Columbus, SCOR, and SCOR Reinsurance Company | ) ) ) ) ) ) ) ) | Magistrate Judge Arlander Keys |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO STAY

The Declaratory Judgment Act, 28 U.S.C. § 2201, is not a tool to launch collateral attacks on contracts and defenses asserted in other actions. Nor is it a tool to obtain advisory opinions or avoid arbitration. Plaintiffs in this action (collectively, "CNA"), however, would have this Court entertain such relief, ignoring an arbitration they demanded that involves some of the very same contracts they ask this Court to adjudge as being outside the scope of a settlement between the parties.

This matter arises out of a settlement ("Commutation Agreement") of reinsurance obligations between CNA and their reinsurers, various SCOR entities (collectively, "SCOR"), including Defendants. As demonstrated below, one of the SCOR entities acquired and assumed from The Unity Fire and General Insurance Company ("Unity Fire") and Allstate Re ("Allstate"), certain contracts of reinsurance that these SCOR predecessors had entered into with CNA. CNA and SCOR later settled on a global basis all reinsurance obligations (with some

specific exceptions) CNA had ceded to SCOR, with a full release of SCOR, its parents, affiliates, subsidiaries, predecessors, successor and assigns. Although the parties studiously avoided listing individual contracts (and there would have been many), CNA claims that certain contracts reinsured with Unity Fire and Allstate were not included in the global agreement. CNA has demanded arbitration against Unity Fire (a former wholly-owned subsidiary of SCOR), sued SCOR, and has asked the Court to decide issues that directly involve and impact the contracts at the center of the arbitration.

CNA undoubtedly will respond that the parties' settlement agreement contains a forum selection clause for any dispute involving an "interpretation" of the agreement. A close reading of the agreement, however, reveals that the parties knew and accepted that an arbitration panel could be asked to rule on the validity of the settlement. (Commutation Agreement ¶ 11) CNA's demand for arbitration against Unity Fire proves the point. The case *sub judice* is not an action to "interpret" an agreement between CNA and SCOR at all. CNA gains nothing with such an "interpretation." Instead, this is a cleverly disguised action to enforce reinsurance agreements originally entered between CNA on the one hand and Allstate or Unity Fire on the other hand, which contain arbitration clauses. (CNA apparently cannot identify any Allstate contract under which it believes there are amounts due and owing.)[1] This action should be stayed, and an arbitration panel should decide whether the Unity Fire contracts are enforceable.

---

[1] Although defendants have not filed a motion with respect to CNA's claim relating to Allstate Re, that claim fails to present a "case on controversy" because there is no pending claim for an amount owed under the former Allstate Re contracts, and thus the court lacks subject matter jurisdiction in respect thereof. To the extent the court were to conclude that subject matter jurisdiction exists with respect to the Allstate Re issue, that claim, like the Unity Fire claim, would be subject to arbitration. Defendants reserve all rights (if any) in respect of the Allstate Re contracts.

**BACKGROUND**

**Reinsurance**

Reinsurance occurs when one insurer (the "ceding company," "cedent" or "reinsured") transfer or "cedes" all or part of the risk it underwrites in respect of a policy or group of policies, to another insurer, the "reinsurer." Put another way, reinsurance is a contract of indemnity that insurance companies purchase in order to lessen their financial burden for losses under policies issued to their insureds. *See generally Citizens Cas. Co of New York v. American Glass Co.*, 166 F.2d 91, 94 (7th Cir. 1948). Reinsurers frequently purchase their own reinsurance, called "retrocessional" coverage, from other reinsurers known as "retrocessionaires." *See generally Trustmark Ins. Co. v. General & Cologne Life Re of America*, 424 F.3d 542, 545 n.1 (7th Cir. 2005).

**The SCOR Companies and CNA Commute in 2006**

As of 2006, SCOR was a large reinsurer of CNA contracts and programs. (See affidavit of Maxine Verne at ¶ 22, a true and correct copy of which is attached hereto, hereafter "Verne Aff. ¶ __") A multitude of the reinsurance arrangements involved numerous SCOR entities as reinsurer and many different types of insurance. In 2006, SCOR and CNA agreed to wind up their reinsurance relationship and commute all of the reinsurance cessions from CNA to SCOR, with some itemized exceptions. (Verne Aff. ¶ 23) Commutations are common in the (re)insurance industry. They often involve a return of an agreed amount of premium to the primary insurer from the reinsurer in exchange for the primary insurer releasing the reinsurer of certain further liability for losses. (Verne Aff. ¶ 24)

As far back as several decades, CNA companies had entered into reinsurance contracts with various (re)insurers, including the company it refers to as Unitrin (f/k/a Unity Fire) and

Allstate Re. With respect to both Unity Fire and Allstate Re, CNA avers that its contracts are solely between CNA on the one hand, and Unitrin and Allstate Re on the other. (*See* Cmplt. ¶¶ 22-27)

**SCOR is the Successor to Unity Fire's Liabilities**

SCOR has succeeded to Unity Fire's liabilities through a series of publicly-reported transactions. At no time before this lawsuit did CNA object to SCOR assuming Unity Fire's business, stepping into Unity Fire's shoes or paying CNA's claims. As matters of both fact and law, SCOR became and remained CNA's reinsurer under the Unity Fire contracts until CNA settled and released those agreements.

In 1990, Unity Fire and General Security Assurance Corporation of New York ("GSAC") were subsidiaries of the Rockleigh Management Corporation. (Verne Aff. ¶ 7) In June 1990, Rockleigh was merged into SCOR's parent, SCOR U.S. Corporation. (Verne Aff. ¶ 7)

Effective January 1, 1991, Unity Fire became a wholly owned subsidiary of GSAC through a four step transaction: (i) Unity Fire sold to GSAC, pursuant to an Asset Purchase Agreement, all of its non-insurance ("Retrocession") assets; (ii) Unity Fire assigned to GSAC, and GSAC assumed pursuant to an Assignment and Assumption Agreement, all of its non-insurance contracts and agreements; (iii) Unity Fire assigned to GSAC, and GSAC assumed pursuant to an Assumption Retrocession Agreement, all contracts and agreements by which Unity Fire had assumed (re)insurance liabilities, and all assets for such (re)insurance liabilities; and (iv) all of Unity Fire's stock was contributed to GSAC. (Verne Aff. ¶ 8) As a result, GSAC acquired Unity Fire's entire (re)insurance business, including whatever (re)insurance that CNA had originally transacted with Unity Fire. (Verne Aff. ¶ 8) The Unity transaction was transparent, and it was approved by State insurance regulators. (Verne Aff. ¶ 10)

4

An assumption reinsurance agreement is a common arrangement in the (re)insurance business community, and involves the transfer of a "portfolio" or "book" of business (*i.e.*, insurance policies and reinsurance agreements). It is frequently employed when a company is retiring from a segment or "line" of business, from a geographic region, or from the business of (re)insurance altogether, or when a book of business is being sold separate and apart from the corporate entity in which the business was originally written. (Verne Aff. ¶ 9)

Effective January 1, 1994, GSAC merged with and into SCOR. As a result, the book of (re)insurance business formerly owned by Unity Fire became SCOR's business and was carried and recorded on SCOR's books and records. Unity Fire did not thereafter record or reflect such business on its books and records. (Verne Aff. ¶ 12)

These transactions were reported to the industry; they were not conducted in secret. *A.M. Best's Insurance Reports*, a widely used and relied upon reporting service, publicly reported the Rockleigh and Unity transactions. (Verne Aff. ¶ 13) Accordingly, since 1994, all claims arising out of the Unity Fire business have been made to, and payments on such claims have been made by, SCOR for itself and in its own name. CNA well knew and understood these facts. Since 1994, CNA directed to SCOR all claim notices and demands for payment under the Unity Fire contracts, and SCOR made such payments to or for the benefit of CNA. (Verne Aff. ¶ 14)

CNA specifically acknowledged SCOR as the successor to Unity Fire. For example, in at least two instances in 2003, CNA's broker, Towers Perrin Reinsurance, presented claims directly to SCOR and referred to SCOR as "SCOR Reinsurance Company (formerly Unity Fire and General Ins.)" (Verne Aff. ¶ 15) Since 1991, GSAC, and then SCOR, functioned as the reinsurer on all of the Unity Fire reinsurance contracts, including those CNA had entered with Unity Fire. (Verne Aff. ¶ 17) In fact, prior to the commutation described in CNA's Complaint,

5

there was no instance where CNA either objected to SCOR's assumption of the (re)insurance CNA had transacted with Unity Fire, or insisted that Unity Fire somehow remained its reinsurer, as opposed to SCOR. (Verne Aff. ¶ 16)

Subsequent transactions involving the entity formerly known as Unity Fire confirm that CNA cannot be one of its creditors. In 1996, Unity Fire changed its name to General Security Property and Casualty Company ("GSPAC"). (Verne Aff. ¶ 18) Effective December 31, 2002, SCOR sold GSPAC to Unitrin, Inc. At the time of GSPAC's sale, its books and records did not reflect any reinsurance assumed from CNA, and SCOR did not intend to sell or transfer to Unitrin, or have Unitrin assume, any reinsurance from CNA. (Verne Aff. ¶ 19) In accordance with the various transactions described above, at the time GSPAC's sale to Unitrin, Inc., the CNA reinsurance originally assumed by Unity Fire, and subsequently carried on SCOR's books and accounts, was intended to and did remain wholly the obligation of SCOR. (Verne Aff. ¶ 19) Unitrin subsequently changed GSPAC's name to Unitrin Preferred Insurance Company ("Unitrin Preferred").[2]

**CNA Demands Arbitration**

On December 28, 2007, plaintiff Continental Insurance Company issued a demand for arbitration relating to the same Unity Fire business alleged in the Complaint. (A true and correct copy of the letter is attached as Exhibit 1 to Defendants' motion) On February 26, 2008, Unity Fire and SCOR Reinsurance Company as successor to Unity Fire (collectively "SCOR"), responded, appointing an arbitrator, and describing the defenses SCOR will assert at the

---

[2] In 1996, SCOR similarly acquired the Allstate Re book of business that included CNA reinsurance contracts. (Verne Aff. ¶ 27) The Allstate Re transaction was a 100% assumption reinsurance transaction, was approved by regulators, and was widely reported. (Verne Aff. ¶ 28) CNA sent claims notices and demands to SCOR and SCOR remitted payments to CNA on the Allstate Re contracts. (Verne Aff. ¶ 30) Again, however, CNA has not claimed any amount due and owing on any Allstate Re contracts. (Verne Aff. ¶ 33)

arbitration. (A true and correct copy of the February 26, 2008 letter is attached as Exhibit 2 to Defendants' motion). Specifically, SCOR advised:

> SCOR believes that an irreconcilable difference of opinion has arisen in respect to the enforceability of the Contract against SCOR. SCOR will seek an award of no liability based upon various defenses, including, without limitation de facto novation, release and commutation. SCOR hereby reserves the right to present additional counter-demands and defenses.

(*Id.*)

## ARGUMENT

CNA is asking this Court (albeit in a roundabout way) to declare the Unity Fire related agreements are still valid. The FAA, however, directs that the Court stay this matter in favor of the pending arbitration. Alternatively, the court should stay further proceedings relating to the pending arbitration pursuant to the Court's inherent discretion, to avoid duplicative litigation of the same issues.

**I.　　THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF ARBITRATION PURSUANT TO THE FAA**

SCOR Re acquired Unity Fire's rights in and assumed all liabilities in the Unity Fire Contracts; it is the successor-in-interest to Unity Fire. With its assumption of the Unity Fire business follows the assumption of the rights of arbitration contained within the contracts. The Seventh Circuit has confirmed that an arbitration clause is transferred along with all other rights and liabilities in asset purchase agreements. *See In the Matter of Chicago Milwaukee St. Paul, and Pacific Railroad Company*, 789 F.2d 1281, 1282-83 (7th Cir. 1986) ("[W]hen the Milwaukee sold its rail assets to the Soo, it transferred the rail liabilities and the duty to arbitrate as well.") Accordingly, as successor-in-interest to the contractual rights and obligations of Unity Fire, SCOR Re is entitled to arbitrate per the clause in the reinsurance agreements at issue. *See id.; see also Reddam v. KPMG LLP et al.*, No. SACV04-1227GLT(MANX), 2004 WL 3761875,

7

\*4-5 (C.D. Cal, Dec. 14, 2004) (Held: non-signatories to arbitration clause entitled to enforce clause, including defendant Sidley Austin Brown & Wood); *Newport Petroleum, Inc. v. Tug Justine Foss*, No. C970966C, 1997 WL 876955, \*1 (W.D. Wash., Sept. 2, 1997) ("A successor in interest can enforce an arbitration clause in a contract signed by its predecessor.")

In light of the binding arbitration clause between CNA and SCOR's predecessor in interest, this case should be stayed until the pending arbitration is resolved. The Federal Arbitration Act ("FAA") provides:

> <u>If any suit or proceeding be brought</u> in any of the courts of the United States <u>upon any issue referable to arbitration</u> under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, <u>shall on application of one of the parties stay the trial of the action</u> until the such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). This action is clearly a suit based upon an issue which already has been referable – indeed, raised in – arbitration; *to wit*: are the Unity Fire contracts enforceable? Consequently, a stay is both required and entirely appropriate.

When ruling on a motion for stay pursuant to § 3 of the FAA, a court may consider only those issues related to the making and performance of the clause, and not to claims regarding enforceability of the contract in general. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400-04 (1967))  The question of a contract's validity should be decided by arbitration. *Id.* Specifically, "the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.'" *Prima Paint*, 388 U.S. at 403. In this case, neither CNA nor SCOR dispute that the arbitration provision in the Unity Fire Contract was valid when made, and the

parties have invoked it to resolve their difference over the commutation issue. Consequently, the court should issue a stay pursuant to § 3 of the FAA.

Even if the Court were to conclude that the issues in this matter are somehow severable from the arbitration – and they are not - the matter should still be stayed. The Court has full discretion to stay this action while the merits are decided in arbitration. *See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n. 22 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court … as a matter of its discretion to control its docket.")

In this case, the equities and judicial economy strongly favor a stay. Again, the ultimate issue in the arbitration is the same as the ultimate issue in this case – enforceability. CNA does not seek a declaration as a final remedy. It is seeking <u>payment</u> and it is abusing the remedy of declaratory judgment to hedge it arbitration bet. The Court should not expend its time and energy on an issue the Plaintiffs have elected to present to a panel of (re)insurance experts. Nor should the Court deprive SCOR of its affirmative arbitration defense of commutation. Nothing can be gained from an inefficient process of litigating the very same issue in two fora. CNA elected its arbitration remedy and the enforceability of the Unity Fire contracts should be decided in arbitration. CNA should not be permitted to evade its arbitration obligations simply because SCOR is the successor to Unity Fire or because CNA has cloaked its contract action as a claim for declaratory judgment.

**II.     ALTERNATIVELY THE ISSUES RELATED TO THE UNITY FIRE CONTRACTS SHOULD BE STAYED PURSUANT TO THE COURT'S INHERENT AUTHORITY**

Even if this Court were not to apply the FAA – despite GSAC and SCOR's 17 continuous years of performance in Unity Fire's stead – this matter should still be stayed pending the

9

resolution of the parallel arbitration. "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Public policy clearly favors arbitration. *See, e.g., Preston v. Ferrer*, 128 S. Ct. 978, 983 (2008) (not yet published in official reporter); *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every courts to control the disposition of the causes on its docket, with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.")

Currently, there is an arbitration – commenced by CNA – to decide the issues CNA purports to present in this litigation. In the interest of judicial economy, this Court should stay this matter so it can be decided by a panel of experts – at the parties' expense as opposed to the public expense. There is no reason CNA cannot receive complete relief if it is successful in arbitration; their demand evidences their belief they could. In other words, if an arbitration panel rules that the contracts are enforceable, SCOR, as successor in interest to Unity Fire, will pay the claims.

## CONCLUSION

This Court should stay this duplicative action pending resolution of the arbitration CNA itself demanded. CNA will not be harmed by a stay, and the public should not be asked to foot the bill to decide an issue which CNA properly placed before a private tribunal.

WHEREFORE, Defendants Commercial Risk Re-Insurance Company, Commercial Risk Reinsurance Company Limited, General Security Indemnity Company of Arizona, General Security National Insurance Company, GIE Columbus, SCOR, S.E., and SCOR Reinsurance Company respectfully request that the Court stay this action pending resolution of arbitration.

10

Date: March 18, 2008         **COMMERCIAL RISK RE-INSURANCE COMPANY, COMMERCIAL RISK REINSURANCE COMPANY LIMITED, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, GENERAL SECURITY NATIONAL INSURANCE COMPANY, GIE COLUMBUS, SCOR, AND SCOR REINSURANCE COMPANY,**

By: /s/Stephen W. Schwab
One of their attorneys

Stephen W. Schwab (ARDC # 6183518)
Carl H. Poedtke III (ARDC # 6237886)
Michael C. Kasdin (ARDC # 6283200)
**DLA PIPER US LLP**
203 North LaSalle Street
Suite 1900
Chicago, IL 60601
Tel (312) 368-4000
Fax (312) 236-7516