IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Continental Casualty Company and Continental Insurance Company, <br><br>　　　　Plaintiffs, <br><br>v. <br><br>Commercial Risk Re-Insurance Company, Commercial Risk Reinsurance Company Limited, General Security Indemnity Company of Arizona, General Security National Insurance Company, GIE Columbus, SCOR, and SCOR Reinsurance Company <br><br>　　　　Defendants. | )<br>)<br>)<br>)　No. 07-C-6912<br>)<br>)<br>)　Honorable Judge Harry D. Leinenweber<br>)<br>)<br>)　Magistrate Judge Arlander Keys<br>)<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF MAXINE H. VERNE**

STATE OF NEW YORK　)
　　　　　　　　　　　　)
COUNTY OF NEW YORK　)

　　I, Maxine H. Verne, having been duly sworn, hereby state as follows under oath:

　　1.　I currently reside in the State of New York, and am over 18 years old.

　　2.　I have personal knowledge of the facts set forth herein, based upon my personal involvement in, and my best recollection of, the events described or my personal review of certain documents kept in the ordinary course of business at my place of employment pursuant to a policy of retaining such materials, which review I undertook to prepare this affidavit. If called, I am willing and would be able to testify to and in accord with the facts set forth herein and believe that I could do so competently, to the best of my knowledge, information and recollection.

　　3.　I am the General Counsel, Corporate Secretary, and Senior Vice-President of SCOR Reinsurance Company ("SCOR"), its corporate parent and certain of SCOR's

subsidiaries. SCOR is a New York corporation with its principal place of business located at 199 Water Street, New York, New York. I have been employed by SCOR since November 1990. I am licensed to practice law in the State of New York, and have held my license to practice law since 1981.

4. I have reviewed the Complaint filed by Plaintiffs Continental Casualty Company and Continental Insurance Company (collectively "CNA") in the matter identified above, and offer this affidavit in support of a motion Defendants filed in respect of that pleading. In light of my position at SCOR, I am able to testify regarding various transactions the company and its affiliates have been part of, and the results and details of the transactions. I make this affidavit solely in my capacity as Corporate Secretary in order to set the factual circumstances of several corporate transactions.

5. This affidavit is intended to be strictly factual in nature. I do not intend that any statement herein is or should be construed as a waiver of any privilege or right to confidentiality - including, without limitation, the attorney-client communication privilege or the attorney work-product doctrine - which may exist by virtue of either my capacity as General Counsel or the fact that I am a licensed attorney. These privileges and rights are not waived and are expressly reserved.

6. As Corporate Secretary of SCOR, I have personal knowledge of the filing and record-keeping system for SCOR and many of its affiliates. For each exhibit attached hereto (except Exhibits C and D), I caused the exhibit to be removed from its file location, examined the exhibit, and recognized the document to be what it purports to be. SCOR retained each of these exhibits pursuant to its record keeping policy and within the regular course of its business.

7. In 1990, The Unity Fire & General Insurance Company ("Unity Fire") and General Security Assurance Corporation of New York ("GSAC") were subsidiaries of the

Rockleigh Management Corporation. In June 1990, Rockleigh was merged into SCOR's parent, SCOR U.S. Corporation.

8. Effective January 1, 1991, Unity Fire became a wholly owned subsidiary of GSAC in four steps: (i) Unity Fire sold to GSAC, pursuant to an Asset Purchase Agreement, all of its non-insurance ("Retrocession") assets; (ii) Unity Fire assigned to GSAC, and GSAC assumed pursuant to an Assignment and Assumption Agreement, all of its non-insurance contracts and agreements; (iii) Unity Fire assigned to GSAC, and GSAC assumed pursuant to an Assumption Retrocession Agreement, all contracts and agreements by which Unity Fire had assumed (re)insurance liabilities, and all assets for such (re)insurance liabilities; and (iv) all of Unity Fire's stock was contributed to GSAC. As a result, GSAC acquired Unity Fire's entire (re)insurance business, including whatever (re)insurance that CNA had originally transacted with Unity Fire.

9. An assumption reinsurance agreement is a common arrangement in the insurance/reinsurance business, and involves the transfer of a "portfolio" or "book" of business (*i.e.*, insurance policies and reinsurance agreements). It is frequently employed when a company is retiring from a segment or "line" of business, from a geographic region, or from the business of (re)insurance altogether, or when a book of business is being sold separate and apart from the corporate entity in which the business was originally written.

10. State insurance regulators were notified of and approved the Unity Fire transaction.

11. Attached hereto as Exhibit A is a true and correct copy of the Assumption Retrocession Agreement dated as of May 1, 1991. Attached hereto as Group Exhibit B is a true and correct copy of a May 20, 1991 cover letter addressed to the New York Insurance Department and the Asset Purchase Agreement between Unity Fire and GSAC effective as of

January 1, 1991. It includes as an exhibit a true and correct copy of the Assignment and Assumption Agreement between Unity Fire and GSAC dated as of January 1, 1991.

12. Effective January 1, 1994, GSAC merged with and into SCOR. As a result, the book of (re)insurance business formerly owned by Unity Fire became SCOR's business and was carried and recorded on SCOR's books and records. Unity Fire did not thereafter record or reflect such business on its books and records.

13. Attached hereto as Exhibit C is a true and correct copy of the relevant portions of the 1997 edition of *A.M. Best's Insurance Reports*, which reflects information that was reported publicly of the Rockleigh and Unity transactions. A.M. Best is a widely used and relied upon reporting service that reflects information which insurance and reinsurance companies file in required financial statements and other reports and notices that are publicly filed.

14. Since 1994, all claims arising out of the Unity Fire business have been made to, and payments on such claims have been made by, SCOR for itself and in its own name. Since 1994, claims and loss notices from CNA were directed to SCOR for payment directly by SCOR, and SCOR made such payments to CNA, its agents, or for the benefit of CNA.

15. In loss notices and payment requests, CNA's representatives and brokers have repeatedly recognized SCOR as the successor to Unity Fire. For example, in at least two instances in 2003, CNA's broker, Towers Perrin Reinsurance, presented claims directly to SCOR and referred to SCOR as "SCOR Reinsurance Company (formerly Unity Fire and General Ins.)"

16. I am not aware of any instance prior to the commutation alleged in CNA's Complaint in which CNA either objected to SCOR's assumption of the (re)insurance CNA had transacted with Unity Fire, or insisted that Unity Fire somehow remained its reinsurer, not SCOR.

17. Since 1991, GSAC, and then SCOR, functioned as the reinsurer on all of the Unity Fire reinsurance contracts, including those CNA had entered with Unity Fire.

18. In 1996, Unity Fire changed its name to General Security Property and Casualty Company ("GSPAC").

19. Effective December 31, 2002, SCOR sold GSPAC to Unitrin, Inc. At the time of GSPAC's sale, its books and records did not reflect any reinsurance assumed from CNA, and SCOR did not intend to sell or transfer to Unitrin, or have Unitrin assume, any reinsurance from CNA. In accordance with the various transactions described above, at the time GSPAC's sale to Unitrin, Inc., the CNA reinsurance originally assumed by Unity Fire, and subsequently carried on SCOR's books and accounts, was intended to and did remain wholly the obligation of SCOR.

20. Unitrin subsequently changed GSPAC's name to Unitrin Preferred Insurance Company ("Unitrin Preferred").

21. As of 2006, SCOR (including its predecessors, subsidiaries and affiliates) was a large reinsurer of CNA contracts and programs. There were numerous reinsurance agreements involving numerous parties, subsidiaries and affiliates.

22. In 2006, SCOR and CNA agreed to wind up their reinsurance relationship and "commute" all of the reinsurance cessions from CNA to SCOR, with some specific exceptions, and entered a Commutation and Release Agreement, which is referred to in CNA's Complaint.

23. "Commutations" are common in the insurance business. They often involve a return by the reinsurer of an agreed amount of premium to the primary insurer in exchange for the primary insurer releasing the reinsurer of further liability for losses and related expenses.

24. By letter dated December 18, 2007, CNA's Continental Insurance Company ("CIC") demanded arbitration in respect of claims purportedly relating to two Unity Fire

contracts. A true and correct copy of the December 18, 2007 letter is attached to Defendants' Application for Partial Stay Pending Arbitration as Exhibit 1.

25. By letter dated February 26, 2008, Unity Fire and SCOR, as Unity Fire's successor in interest under the facultative reinsurance contracts cited in the demand letter, responded to CIC's arbitration demand. A true and correct copy of the December 26, 2008 letter is attached to Defendants' Application for Partial Stay Pending Arbitration as Exhibit 2.

26. It is SCOR's position that the Unity Fire contracts were included in and have been commuted pursuant to the Commutation and Release Agreement. Because CNA demanded arbitration in respect of those contracts pursuant to arbitration clauses contained in those contracts, SCOR believes that it must arbitrate the dispute, but advised CNA that it will assert release and commutation as a defense to CNA's claim(s).

27. On September 15, 1996, SCOR's parent company, SCOR U.S. Corporation, acquired certain assets of the reinsurance division of Allstate Insurance Company, known as Allstate Re ("Allstate"). That asset purchase included the post-1984 reinsurance book of business written by Allstate Re, including insurance obligations that CNA had ceded to Allstate (known as "cessions").

28. The Allstate Re business, including the CNA cessions, were transferred to and assumed by SCOR pursuant to a 100% assumption reinsurance transaction. The entire transaction was noticed to and approved by regulators, and was widely reported in the media covering the insurance industry. Attached hereto as Exhibit D is a true and correct copy of the Assumption and Indemnity Retrocession Agreement between SCOR Reinsurance Company and Allstate Insurance Company dated September 15, 1996.

29. Exhibit C, the 1997 *Best's Reports*, reflects public reporting of the Allstate Re transaction.

30. Since 1996, claims arising out of the Allstate business were submitted to, and payments on such claims made by, SCOR for itself and in its own name. Claims and loss notices were directed to SCOR for payment directly by SCOR, and SCOR has made such payments to cedents, their agents, or otherwise for the benefit of reinsureds.

31. Since 1996, SCOR has functioned in fact, if not in name, as the Reinsurer on all of the Allstate contracts it purchased.

32. In sum, following both the Unity Fire and Allstate transactions, SCOR has stepped into the shoes of each entity as if SCOR was the original issuing Reinsurer.

33. In paragraph 35 of the Complaint, CNA alleges that over $1.7 million dollars has been billed under the Allstate Re "and/or" Unity Fire contracts. The only claim for which CNA purports to bill, and which it has invoiced directly to SCOR, relates to the amount demanded of $1,773,363 in relation to the Unity Fire contracts SCOR acquired. There is no demand that relates to Allstate business of which I am aware.

34. It is my understanding, as is customary in the insurance/reinsurance business community, that each of the contracts SCOR acquired, as part of the transactions with Unity Fire and Allstate, include broad arbitration clauses for purposes of dispute resolution.

FURTHER AFFIANT SAYETH NOT.

_____
MAXINE H. VERNE

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 17th DAY OF March, 2008

_____
Notary Public

IRENE KRAKER
Notary Public, State of New York
No. 01KR4858162
Qualified in Queens County
Commission Expires April 28, 2010