# Ex. D

ASSUMPTION AND INDEMNITY RETROCESSION AGREEMENT

by and between

ALLSTATE INSURANCE COMPANY

and

SCOR REINSURANCE COMPANY

Dated as of September 15, 1996

TABLE OF CONTENTS

Page

ARTICLE I        DEFINITIONS . . . . . . . . . . . . . . . . .        1

ARTICLE II       BUSINESS REINSURED . . . . . . . . . . . .        2

ARTICLE III      CONSIDERATION . . . . . . . . . . . . . .        4

ARTICLE IV       RESERVES; CREDIT FOR REINSURANCE . . . . . .        5

ARTICLE V        SECURITY . . . . . . . . . . . . . . . . .        5

ARTICLE VI       ASSIGNMENT OF CEDED REINSURANCE AGREEMENTS .        8

ARTICLE VII      INDEMNIFICATION . . . . . . . . . . . . . .        10

ARTICLE VIII     GENERAL PROVISIONS . . . . . . . . . . . .        11

ARTICLE IX       ACCOUNTING . . . . . . . . . . . . . . . .        12

ARTICLE X        DURATION . . . . . . . . . . . . . . . . .        12

ARTICLE XI       INSOLVENCY . . . . . . . . . . . . . . . .        13

ARTICLE XII      ARBITRATION . . . . . . . . . . . . . . . .        13

ARTICLE XIII     MISCELLANEOUS PROVISIONS . . . . . . . . . .        14

## ASSUMPTION AND INDEMNITY RETROCESSION AGREEMENT

This Assumption and Indemnity Retrocession Agreement (this "Agreement"), dated as of 11:59:59 p.m. Eastern Daylight Savings Time on September 15, 1996 (the "Effective Date"), is made by and between Allstate Insurance Company, a stock insurance company organized under the laws of the State of Illinois ("Allstate"), and SCOR Reinsurance Company, a stock insurance company organized under the laws of the State of New York ("SCOR Re").

WHEREAS, Allstate and SCOR Re are entering into this Agreement pursuant to the Purchase Agreement (as defined below); and

WHEREAS, Allstate has agreed to retrocede to SCOR Re, and SCOR Re has agreed to assume certain liabilities and obligations of Allstate under the Reinsurance Contracts (as defined in the Purchase Agreement) and pay to Allstate the Ceding Commission (as defined herein).

NOW, THEREFORE, in consideration of the mutual covenants and promises and upon the terms and conditions set forth herein, the parties hereto agree as follows:

### ARTICLE I

### DEFINITIONS

Section 1.01.  Capitalized terms used herein and not otherwise defined in this Agreement shall have the meanings given to them in the Purchase Agreement.  As used in this Agreement, the following terms shall have the following meanings:

"AAA" shall have the meaning set forth in Section 12.01 hereof.

"Ceding Commission" means the amount of third party commissions, brokerage and contingent commissions directly related to the production of business evidenced by the Reinsurance Contracts but excluding internal underwriting and selling costs calculated using the unearned premium method as determined in accordance with the Accounting Principles and by reference to the Estimated Business Balance Sheet or the Final Business Balance Sheet, as the case may be.

"Effective Date" means the date specified in the first paragraph hereof.

"Non-Novated Contracts" shall have the meaning set forth in Section 2.02 hereof.

"Novated Contracts" shall have the meaning set forth in Section 2.03 hereof.

"Obligations" shall have the meaning set forth in Section 5.02 hereof.

"Other Liabilities" shall have the meaning set forth in Section 6.02 hereof.

"Purchase Agreement" means the Asset Purchase Agreement, dated as of July 23, 1996, among Allstate, SCOR U.S. Corporation and SCOR.

"Qualified United States Financial Institution" shall mean a bank or trust company which is a member of the Federal Reserve System of the United States of America or a New York State chartered bank and shall not be a parent, subsidiary or affiliate of SCOR Re or Allstate.

"Reinsurance Administration Agreement" means the Reinsurance Administration Agreement, dated as of the date hereof, between Allstate and SCOR Re.

"Required Approval" shall have the meaning set forth in Section 2.02 hereof.

"Required License" shall have the meaning set forth in Section 2.02 hereof.

"Trust Account" means the Trust Account established pursuant to the Trust Agreement.

"Trust Agreement" means the Trust Agreement, dated as of September 15, 1996, by and among SCOR Re, Allstate and The Bank of New York, a banking corporation organized and existing under the laws of the State of New York.

## ARTICLE II

### BUSINESS REINSURED

Section 2.01.  **Assumption Retrocession**.  Effective as of the Effective Date, and except as provided in Section 2.02 hereof, Allstate shall transfer, assign and cede to SCOR Re, and SCOR Re shall accept and assume as direct obligations, and indemnify Allstate for, one hundred percent (100%) of the Reinsurance Liabilities as if SCOR Re were the original issuer of each of the Reinsurance Contracts.

Section 2.02.  **Indemnity Retrocession**.  To the extent that the assumption reinsurance contemplated by Section 2.01 hereof shall be subject to the approval or consent of any third party (a "Required Approval"), including, without limitation, any regulatory authority or any ceding insurer or ceding reinsurer under a Reinsurance Contract, or the issuance of any insurance license to SCOR Re necessary to effectuate the assumption reinsurance contemplated by Section 2.01 hereof (a "Required

-2-

License"), and such Required Approval or Required License shall not have been obtained and be in effect as of the Effective Date, then each Reinsurance Contract as to which any such Required Approval or Required License shall not have been obtained shall be reinsured on a one hundred percent (100%) quota share indemnity reinsurance basis, and Allstate shall retrocede, and SCOR Re shall accept and assume, and indemnify Allstate for, one hundred percent (100%) of the Reinsurance Liabilities under such Reinsurance Contracts until such time as the appropriate Required Approval or Required License shall have been obtained (all Reinsurance Contracts with respect to which Required Approvals or Required Licenses have not been obtained are hereinafter referred to as "Non-Novated Contracts").

Section 2.03.  <u>Novation</u>.  As soon as practicable after the Effective Date SCOR Re shall exercise its reasonable efforts to obtain any Required Approval or Required License, as the case may be, and upon receipt of such approval or license, any Reinsurance Contract subject to such approval or license shall immediately, and without further action of either party hereto, be deemed to be reinsured on an assumption reinsurance basis pursuant to Section 2.01 hereof (all Reinsurance Contracts for which necessary approvals or licenses have been obtained or are not required at the Effective Date or thereafter are hereinafter referred to as "Novated Contracts").  Each party hereto shall be responsible for its own fees and expenses associated with obtaining any Required Approval or Required License.

Section 2.04.  <u>Direct Obligation</u>.  SCOR Re shall be the successor to Allstate under the Novated Contracts as if the Novated Contracts were direct obligations originally issued by SCOR Re; <u>provided</u>, <u>however</u>, with respect to any Reinsurance Contract with a ceding insurer located outside the United States, SCOR Re may, subject to the Required Approval, if any, of such ceding insurer, have such Reinsurance Contract assumed by an appropriately licensed Affiliate of SCOR Re and such Affiliate of SCOR Re shall be the successor to Allstate under such Reinsurance Contract as if such Reinsurance Contract was a direct obligation originally issued by such Affiliate of SCOR Re.  Allstate shall have no further obligation to any person under a Novated Contract with respect to any Reinsurance Liabilities and SCOR Re or such Affiliate shall succeed to all of Allstate's rights of any nature whatsoever thereunder.  SCOR Re or such Affiliate shall be substituted in the place and stead of Allstate with respect to the Reinsurance Liabilities, and each person with a claim under a Novated Contract shall disregard Allstate as a party thereto and shall treat SCOR Re or such Affiliate as if it had been originally obligated with respect to the Reinsurance Liabilities thereunder.

Section 2.05.  <u>Claims and Payments under the Reinsurance Contracts.</u>  On and after the Effective Date, and as set forth more fully in the Reinsurance Administration Agreement, each person with a claim under Reinsurance Contracts retroceded

-3-

hereunder shall be directed to file claims or take other actions directly with SCOR Re, and shall have a direct right of action for the Reinsurance Liabilities against SCOR Re, and SCOR Re hereby consents to be subject to direct action taken by any such persons under a Reinsurance Contract and to make payments to such persons; provided, however, that this Agreement shall not confer upon any person rights other than such rights that such person would have had in the absence of this Agreement (except that in assessing such rights no effect shall be given to any bankruptcy, liquidation, insolvency, reorganization or moratorium of Allstate, or the effect of laws or legal procedures affecting enforcement of creditors' rights against Allstate generally); provided, further, that the parties hereto acknowledge and agree that (i) Allstate will retain liability under Non-Novated Contracts and shall be reinsured and indemnified by the SCOR Re pursuant to the terms of Section 2.02 hereof and (ii) notwithstanding anything in this Section 2.05 to the contrary, in the event that Allstate is under an order of insolvency as defined under Article XIII of the Illinois Insurance Code, the provisions of Article XI hereof shall control the filing and payment of claims with respect to Non-Novated Contracts.  No person shall have the right to receive a greater amount under a Reinsurance Contract than such person would have had in the absence of this Agreement.

Section 2.06.  <u>Conditions; Preservation of Defenses</u>. All Reinsurance Liabilities for which SCOR Re shall assume liability hereunder are subject in all respects to the same written terms, conditions, waivers, modifications, alterations and cancellations as the Reinsurance Contracts.  SCOR Re accepts and assumes the Reinsurance Liabilities subject to all defenses, setoffs and counterclaims to which Allstate would be entitled with respect to the Reinsurance Contracts.  The parties agree that no such defenses, setoffs or counterclaims are waived under this Agreement and that as of the Effective Date SCOR Re shall be fully subrogated to all such defenses, setoffs and counterclaims and be entitled to the full benefits thereof.

Section 2.07.  <u>Assumed Reinsurance</u>.  Upon the novation of any Reinsurance Contract, SCOR Re agrees to provide the ceding insurer under such Novated Contract with a letter of credit, trust fund or other security mechanism for the benefit of such ceding insurer to the extent such mechanism is required from SCOR Re to provide such ceding insurer with financial statement credit for reinsurance.

ARTICLE III

CONSIDERATION

Section 3.01.  <u>Initial Consideration</u>.  In consideration of SCOR Re's assumption of the Reinsurance Liabilities hereunder and payment of the Ceding Commission in accordance with the provisions of Section 2.02(b)(iii) of the Purchase Agreement,

Allstate shall transfer and pay over an amount calculated in accordance with Section 2.02(b) of the Purchase Agreement. Such payments shall be subject to the adjustment referred to in Section 2.02(d) of the Purchase Agreement.

Section 3.02. <u>Additional Consideration</u>. As additional consideration, and to the extent not inconsistent with Section 2.02 hereof, Allstate shall assign, transfer, convey and set over all of its rights of any nature whatsoever under (i) the Reinsurance Agreements and (ii) subject to the provisions of Article VI hereof, the Retrocession Agreements.

Section 3.03. <u>Future Premiums</u>. SCOR Re is entitled to receive all premiums and other consideration paid on or after the Effective Date with respect to the Reinsurance Contracts. In the event that Allstate receives any premiums or other consideration with respect to a Reinsurance Contract on or after the Effective Date, it shall promptly remit such premiums or other consideration to SCOR Re, along with pertinent information in its possession relating to such premiums, including information as to the Reinsurance Contract and period to which such premium relates. As set forth more fully in the Reinsurance Administration Agreement, SCOR Re shall assume all responsibility for billing and collection of premiums. Allstate shall reasonably cooperate with SCOR Re in causing ceding insurers under the Non-Novated Contracts to pay premiums to SCOR Re after the Effective Date; <u>provided</u>, <u>however</u>, that Allstate shall be reimbursed for all reasonable out-of-pocket expenses, including reasonable fees, costs and disbursements of accountants, actuaries and counsel, incurred by or on behalf of Allstate in connection with the foregoing.

## ARTICLE IV

## RESERVES; CREDIT FOR REINSURANCE

Section 4.01. <u>Reserves; Credit for Reinsurance</u>. SCOR Re shall take all actions reasonably necessary to permit Allstate to obtain full financial statement credit in all applicable jurisdictions for the reinsurance provided to it by SCOR Re pursuant to this Agreement. Any reserves required by the foregoing in no event shall be less than the amounts required under the law of any jurisdiction having regulatory authority with respect to the establishment of reserves relating to the Reinsurance Contracts.

## ARTICLE V

## SECURITY

Section 5.01. <u>Creation of Trust</u>. On or before the Effective Date, SCOR Re, as grantor, shall enter into the Trust Agreement substantially in the form attached as Exhibit G to the

Purchase Agreement and establish the Trust Account with the Trustee, which shall be a Qualified United States Financial Institution, for the benefit of Allstate, as beneficiary, with respect to the Obligations (as defined below) under Non-Novated Contracts.

Section 5.02.  <u>Purpose of Trust</u>.  Allstate shall transfer to the Trust Account on the Closing Date cash in an amount equal to the difference between the absolute amounts of the Net Transferred Liabilities and the Ceding Commission, and SCOR Re shall transfer to the Trust Account an amount of cash equal to the difference between (i) the Obligations and (ii) the difference between the absolute amounts of the Net Transferred Liabilities and the Ceding Commission, to be held in trust by the Trustee for the benefit of Allstate as security for the payment of SCOR Re's obligations to Allstate under this Agreement.  Such assets shall initially be in an amount that is equal to or exceeds the Obligations, with respect to the Non-Novated Contracts shown on the Estimated Business Balance Sheet. "Obligations" shall mean losses, allocated loss adjustment expenses, reserves for losses reported and outstanding, reserves for losses incurred but not reported and reserves for loss adjustment expenses and unearned premiums with respect to the Non-Novated Contracts.  Within five days after the Final Business Balance Sheet has been determined, SCOR Re shall, if necessary, in accordance with Section 2.02(d) of the Purchase Agreement, adjust the value of the assets held in the Trust Account so that the market value of such assets equals or exceeds the amount of the Obligations with respect to the Non-Novated Contracts shown on the Final Business Balance Sheet.  Within five days after each monthly report required by Section 9.01 hereof is due, the value of the assets held in the Trust Account (taking into account the amount of Obligations set forth in the most recent quarterly report required by Section 9.01 hereof and any novations that have occurred subsequent to the date as of which such Obligations were determined) shall be increased or decreased, as appropriate, in accordance with the terms of this Agreement and the terms of the Trust Agreement.

Section 5.03.  <u>Trust Assets</u>.  SCOR Re agrees that the assets so deposited, and assets held in the trust account thereafter, shall be valued at market value and shall consist of cash (United States legal tender), certificates of deposit (issued by a United States bank and payable in United States legal tender) and investments of a type permitted by New York Insurance Department Reg. 114 (11 NYCRR Part 126).

Section 5.04.  <u>Title of Assets</u>.  SCOR Re, prior to depositing assets with the Trustee, shall execute assignments or endorsements in blank to the Trustee for all shares, obligations or any other assets requiring assignments, in order that Allstate or the Trustee upon direction of Allstate may whenever necessary negotiate any such assets without consent or signature from SCOR Re or any other person.

-6-

Section 5.05. <u>Settlements</u>. All settlements of account under the Trust Agreement between Allstate and SCOR Re shall be made in cash or its equivalent.

Section 5.06. <u>Withdrawals by Allstate</u>. SCOR Re and Allstate agree that the assets in the Trust Account may be withdrawn by Allstate at any time upon five (5) days prior written notice to the Trustee and SCOR Re, which notice shall describe in reasonable detail the application and utilization of such withdrawn assets, notwithstanding any other provisions in this Agreement, provided such assets are applied and utilized by Allstate or any successor of Allstate by operation of law, including, without limitation, any liquidator, rehabilitator, receiver or conservator of Allstate, without diminution because of the insolvency of Allstate or SCOR Re, only for the following purposes:

(i) to reimburse Allstate for SCOR Re's share of losses, expenses or unearned premiums constituting part of the Obligations assumed by SCOR Re pursuant to Section 2.02 of this Agreement that have been paid by Allstate from its own funds in accordance with the provisions of Section 7.01 hereof; and

(ii) where Allstate receives notification of termination of the Trust Account without appointment of a successor Trustee and where the Obligations remain unliquidated or undischarged in an amount exceeding $20 million ten (10) days prior to such termination date, to withdraw amounts equal to the amount by which such Obligations exceed $20 million and deposit such amounts in a separate account, in the name of Allstate in any United States bank or trust company, apart from its general assets, in trust for such uses and purposes specified in (i) above as may remain executory after such withdrawal and for any period after such termination date.

Section 5.07. <u>Return of Assets</u>. (a) In the event that Allstate withdraws assets from the Trust Account for the purposes set forth in Section 5.06 (i) or (ii) in excess of actual amounts required to meet SCOR Re's obligations to Allstate, Allstate promptly will return such excess to SCOR Re. Allstate will pay SCOR Re interest at the London Interbank Offered Rate for six month periods as reported in the <u>Wall Street Journal</u> on the day of such withdrawal on any such excess amounts held by Allstate.

(b) In the event that SCOR Re withdraws assets from the Trust Account for purposes set forth in Section 5.08(i), (ii) or (iii) in excess of the amounts permitted to be withdrawn thereunder, SCOR Re promptly will return such excess to the Trust Account with interest on such excess at the London Interbank Offered Rate for six month periods as reported in the <u>Wall Street</u>

-7-

<u>Journal</u> on the day of such withdrawal on any such excess amounts held by SCOR Re.

     Section 5.08. <u>Withdrawals by SCOR Re</u>. SCOR Re shall have the right to withdraw all or any part of the assets from the Trust Account for the following purposes; <u>provided</u>, <u>however</u>, that, with respect to withdrawals pursuant to subsections (ii) and (iii) below, SCOR Re shall provide forty-eight hours prior written notice to Allstate if SCOR Re proposes to withdraw an amount from the Trust Account that exceeds $10 million:

        (i)  To replace, at the time of withdrawal, the withdrawn assets with other Authorized Assets (as defined in the Trust Agreement) having a market value equal to the market value of the assets withdrawn, so as to maintain the Trust Account in an amount equal to 100% of the Obligations under the Non-Novated Contracts, as shown in the most recent monthly report required under this Agreement;

        (ii)  To use such withdrawn assets to pay amounts due in the name of Allstate under the Non-Novated Contracts; or

        (iii)  To reduce the market value of the Trust Account to an amount that is, after such withdrawal, no less than 100% of the Obligations under the Non-Novated Contracts, as shown in the most recent monthly report required under this Agreement.

SCOR Re shall provide written notice to Allstate of any withdrawals made pursuant to this Section 5.08.

     Section 5.09. <u>Termination.</u>  During the period when claims for indemnification, which have been made in good faith and individually or in the aggregate exceed $250,000, shall have been made by Allstate pursuant to this Agreement and such claims remain unsettled, the amount of assets held in the Trust Account shall not be reduced to an amount less than the aggregate amount of such claims, notwithstanding any provision of the Trust Agreement, including, without limitation, Sections 1.10 and 3.01, or this Agreement.

     Section 5.10. <u>Letters of Credit</u>. At the option of SCOR Re, letters of credit meeting the requirements of New York Insurance Department Reg. 133 (11 NYCRR Part 79) may be substituted in whole or in part for the Trust Account in order to provide the security required under Section 5.02 hereof. The letter of credit will be procured from a Qualifying United States Financial Institution and may be drawn down at any time by Allstate, only for the purposes set forth in Section 5.06 hereof, without diminution because of the insolvency of Allstate or SCOR Re. If the letter of credit is drawn down, the provisions of Section 5.07 hereof shall apply to the amount so drawn.

Section 5.11.  <u>Expenses</u>.  All expenses of establishing and maintaining the Trust Account or letter of credit shall be paid by SCOR Re.

## ARTICLE VI

## ASSIGNMENT OF CEDED REINSURANCE AGREEMENTS

Section 6.01.  <u>Assignment and Assumption</u>.  (a)  As of the Effective Date, Allstate shall transfer, set over, assign and convey to SCOR Re all of its rights and obligations of any nature whatsoever under any Retrocession Agreement, including (i) amounts held by or which may become due from assuming reinsurers with respect to any Retrocession Agreement, and (ii) letters of credit, trust funds and other security mechanisms outstanding for the benefit of Allstate pursuant to the terms of any of the Retrocession Agreements.  SCOR Re shall accept such conveyance, transfer and assignment of Allstate's rights under the Retrocession Agreements and assumes all of Allstate's obligations under the Retrocession Agreements existing on or arising after the Effective Date.  As soon as practicable after the Effective Date, SCOR Re and Allstate shall use their respective reasonable best efforts to cause all of the Retrocession Agreements to be endorsed to substitute SCOR Re for Allstate as the cedent, effective as of the Effective Date.  The parties hereto shall pay their own costs associated with obtaining such novations.

(b)  The assignment and assumption of the Retrocession Agreements effected by this Section 6.01 shall be effective only if such assignment and assumption (i) is permitted under the terms of each Retrocession Agreement or as otherwise consented to by the retrocessionaire and (ii) shall preserve fully the obligations of the reinsurers thereunder in respect of the Reinsurance Contracts.  If Allstate's rights and obligations under any Retrocession Agreement are not assigned to and assumed by SCOR Re pursuant to the foregoing sentence (i) after the Effective Date, SCOR Re shall be responsible for the payment of all premiums and other considerations required to be paid by Allstate in respect of any of the Retrocession Agreements, (ii) all reinsurance recoveries attributable to any of the Retrocession Agreements are assigned and shall accrue to the benefit of SCOR Re hereunder by operation of this Section 6.01 and shall, upon receipt thereof by Allstate, be paid promptly thereby to SCOR Re upon and in accordance with its direction, and (iii) such assignment and assumption shall be effective at such time as the assignment and assumption may be effected while preserving fully the obligations of the reinsurer under the respective Retrocession Agreement.  Allstate shall reasonably cooperate with SCOR Re in causing retrocessionaires under the Retrocession Agreements to pay reinsurance recoveries to SCOR Re after the Effective Date.

Section 6.02.  <u>Limitation on Assignment and Assumption</u>.
Allstate and SCOR Re acknowledge and agree that any payments due
to or from an assuming retrocessionaire under any Retrocession
Agreement that relate to any business of Allstate that is not
part of Reinsurance Liabilities shall be for Allstate's account.
The Retrocession Agreements provide coverage for Reinsurance
Liabilities (whether under Novated or Non-Novated Contracts) and
also for liabilities of Allstate that are not Reinsurance
Liabilities assumed by Purchaser hereunder (the "Other
Liabilities").  Allstate shall provide SCOR Re with information
as to obligations or claims relating to such Other Liabilities.
SCOR Re shall collect any amounts due from assuming
retrocessionaires under Retrocession Agreements pursuant to
section 5.09 of the Reinsurance Administration Agreement, and
shall report to Allstate the share of any such recoveries that
relates to Other Liabilities in connection with the monthly
accounting reports required under this Agreement, and payment of
any such share shall be made to Allstate upon request.  Services
provided by SCOR Re with respect to Other Liabilities shall be at
Allstate's risk and expense.  In the event that Allstate shall
receive any amount as a recovery from an assuming
retrocessionaire under a Retrocession Agreement, it shall have
the right to retain the share of such recovery relating to Other
Liabilities, and shall forward the balance to SCOR Re in
accordance with the requirements of section 6.01(b) of this
Agreement.

Section 6.03.  <u>Ceded Reinsurance Collateral</u>.  To the
extent necessary to effect transfer of any Retrocession
Agreement, Allstate hereby appoints SCOR Re as attorney-in-fact
for Allstate to act for and on behalf of Allstate with respect to
letters of credit, trust funds and other security mechanisms
outstanding for the benefit of Allstate pursuant to the terms of
any of the Retrocession Agreements, and Allstate shall execute
and deliver to SCOR Re such additional instruments as SCOR Re may
reasonably request to give effect to such appointment as
attorney-in-fact, and to provide appropriate evidence that
Allstate has assigned to SCOR Re all of Allstate's rights under
Retrocession Agreements with respect to any such letters of
credit, trust funds or other accounting mechanism.  SCOR Re shall
use its reasonable best efforts to the extent deemed reasonably
necessary by SCOR Re, to cause the reinsurers under the
Retrocession Agreements to provide replacement letters of credit,
trust funds or other security mechanisms, as applicable, naming
SCOR Re as the beneficiary thereof in amounts and with terms
substantially similar to those currently provided by such
reinsurers for the benefit of Allstate.

## ARTICLE VII

### INDEMNIFICATION

Section 7.01.   Sole Remedy.   Notwithstanding anything to the contrary in this Agreement, the Trust Agreement or the Reinsurance Administration Agreement, Allstate shall not settle any claim, waive any right, defense, setoff or counterclaim with respect to, or amend, commute or terminate, any Reinsurance Contract or Retrocession Agreement without the prior written consent of SCOR Re, except in accordance with the provisions of the indemnities referred to in the following sentence. Allstate's sole and exclusive remedy with respect to a breach of this Agreement shall be the indemnities provided by Section 10.01(b) of the Purchase Agreement, except that any dispute between the parties arising hereunder for which such indemnities are being sought shall be subject to arbitration pursuant to Article XII hereof.

## ARTICLE VIII

### GENERAL PROVISIONS

Section 8.01.   Administration.   The parties hereto acknowledge that Allstate hereby appoints SCOR Re to perform administrative and other services with respect to the Non-Novated Contracts after the Effective Date pursuant to the Reinsurance Administration Agreement.   SCOR Re shall perform such services at its own cost and expense.

Section 8.02.   Inspection.   SCOR Re and Allstate or their designated representatives may inspect, at the place where such records are located, any and all books and records of the other party hereto reasonably relating to this Agreement, during normal business hours and upon reasonable notice.   The rights of the parties under this Section 8.02 shall survive termination of this Agreement.

Section 8.03.   Misunderstandings and Oversights.   Any delay, omission, error or failure to pay amounts due or to perform any other act required by this Agreement that is unintentional and caused by misunderstanding or oversight shall not be held to relieve either party to this Agreement from any obligation hereunder if such delay, omission, error or failure is corrected within twenty Business Days of receipt of notice of such delay, omission, error or failure and neither party shall have been prejudiced.

Section 8.04.   Adjustments.   If the liability of Allstate under any of the Non-Novated Contracts is changed as a result of a change required by law or regulation or any other reason, SCOR Re will share in the change proportionately to the amount reinsured hereunder.

-11-

Section 8.05.    <u>Communications Relating to the Reinsurance Contracts</u>.  After the Effective Date, Allstate and SCOR Re each shall forward promptly to the other copies of all notices and other written communications it receives relating to the Reinsurance Contracts (including without limitation, all inquiries and complaints from state insurance regulators, brokers and other service providers and reinsureds and all notices of claims, suits and actions for which it receives service of process).

Section 8.06.    <u>Duty of Cooperation</u>.  Allstate and SCOR Re shall cooperate fully with the other in all reasonable respects in order to accomplish the objectives of this Agreement.

ARTICLE IX

ACCOUNTING

Section 9.01.    <u>Accounting Reports</u>.  On or before the last Business Day of each month, SCOR Re will provide Allstate with reports of activities under this Agreement and the Reinsurance Administration Agreement for the preceding month. Such reports shall show any amounts due Allstate or SCOR Re, as the case may be, as reimbursement for paid claims, premiums or other amounts due with respect to the Non-Novated Contracts.  On or before the last Business Day of January, April, July and October, SCOR Re shall provide Allstate with quarterly reports or an annual report, as the case may be.  Each quarterly report or annual report shall show the amount of Obligations under Article V hereof and such monthly and quarterly reports shall be in a mutually agreed upon form.

Section 9.02.    <u>Financial Statement Information</u>.  In connection with the reports required in Section 9.01 hereof, SCOR Re and Allstate will each provide the other with the financial, accounting and actuarial information necessary to prepare regulatory, tax and GAAP monthly, quarterly and annual financial statements and returns and satisfy other related requirements, including reserve and related calculations respecting the Non-Novated Contracts in the form reasonably required by SCOR Re and Allstate, and will maintain or cause to be maintained the data processing systems that will enable them to provide such information.  The procedures and time schedules for the transmission and receipt of such information shall be as set forth in the Reinsurance Administration Agreement.

Section 9.03.    <u>Reports to Insurance Departments</u>. During the term of this Agreement, SCOR Re and Allstate will promptly furnish to the other, copies of any and all filings with, and reports or communications received from, any regulatory authority which relate directly and materially to the Reinsurance Contracts, including, without limitation, each annual statement, each quarterly financial report to the insurance department of the party's domicile and each report on periodic examination

issued by the insurance department of the party's domicile to the
extent it relates to the Reinsurance Contracts.

## ARTICLE X

### DURATION

Section 10.01.  _Duration_.  Except as mutually agreed
by Allstate and SCOR Re, this Agreement shall terminate when all
Reinsurance Contracts are novated and all Retrocession Agreements
are endorsed pursuant to Section 2.03 and Section 6.01,
respectively, hereof.

## ARTICLE XI

### INSOLVENCY

Section 11.01.  _Payments by SCOR Re_.  SCOR Re hereby
agrees that all amounts due under this Agreement with respect to
Non-Novated Contracts shall be payable by SCOR Re on the basis of
the liability of Allstate under such contracts, without
diminution because of the insolvency, liquidation or rehabili-
tation of Allstate.  SCOR Re shall make payments due hereunder
directly to Allstate or to its conservator, receiver, liquidator
or other statutory successor; _provided_, _however_, that any amount
due with respect to Novated Contracts shall be paid by SCOR Re
directly to the ceding insurer under such contracts.

Section 11.02.  _Claims_.  It is agreed that any
conservator, receiver, liquidator or statutory successor of
Allstate shall give prompt written notice to SCOR Re of the
pendency or submission of a claim under any Reinsurance Contract.
With respect to any Non-Novated Contract, during the pendency of
such claim, SCOR Re may investigate such claim and interpose, at
its own expense, in the proceeding where such claim is to be
adjudicated, any defense available to Allstate or its
conservator, receiver, liquidator or statutory successor.  The
expense thus incurred by SCOR Re is chargeable against Allstate
as a part of the expense of insolvency, liquidation or rehabili-
tation to the extent of a proportionate share of the benefit
which accrues to Allstate solely as a result of the defense
undertaken by SCOR Re.  Where SCOR Re and other assuming
companies are involved in the same claim and a majority in
interest elect to interpose a defense to such claim, the expense
shall be apportioned in accordance with the terms of the
reinsurance agreement as though such expense had been incurred by
Allstate.

ARTICLE XII

ARBITRATION

Section 12.01.    <u>Appointment of Arbitrators</u>.    Any dispute or difference arising under this Agreement that cannot be resolved by agreement among the parties hereto shall be decided by arbitration in accordance with this Article XII.  Any such arbitration shall be conducted expeditiously and confidentially in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") as such rules shall be in effect on the date of delivery of demand for arbitration.  Any such arbitration shall be heard and conducted in Chicago, Illinois.  Notwithstanding the rules of the AAA, the arbitration panel in any such arbitration shall consist of three persons who must be disinterested current or retired officers of insurance or reinsurance companies other than the parties to this Agreement or their Affiliates.  Within twenty days of delivery of any demand for arbitration hereunder, Allstate and SCOR Re shall each appoint one arbitrator, and the two arbitrators so selected shall appoint the third arbitrator within twenty days of their appointment.  In the event the two selected arbitrators are unable to agree upon the selection of a third arbitrator after reasonable efforts, a panel of seven qualified persons shall be requested from the AAA.  The parties shall alternately strike one person with the last remaining person being the third designated arbitrator.  Each party shall pay the fees of its own attorneys, expenses of witnesses and all other expenses connected with the presentation of such party's case.  One-half of any remaining costs of any arbitration, including the cost of the record or transcripts thereof, if any, administrative fees and all other fees involved shall be paid by SCOR Re, and the remaining one-half shall be paid by Allstate.

Section 12.02.    <u>Decision</u>.    The arbitrators shall consider customary and standard practices in the reinsurance business.  They shall decide by a majority vote of the arbitrators.  All conclusions of law reached by the arbitrators shall be made in accordance with the internal substantive laws of the State of New York without regard to conflict of laws principles.  Any award rendered by the arbitrators shall be accompanied by a written opinion setting forth the findings of fact and conclusions of law relied upon in reaching their decision.  There shall be no appeal from their written decision.  Judgment may be entered on the decision of the arbitrators by any court having jurisdiction.

Section 12.03.    <u>Confidentiality</u>.    SCOR Re and Allstate agree that the existence, conduct and content of any arbitration shall be kept confidential and no party shall disclose to any person any information about such arbitration, except as may be required by law or for financial reporting purposes in each party's financial statements.

-14-

Section 12.04.   <u>Survival of Article</u>.  This Article XII shall survive termination of this Agreement.

Section 12.05.   <u>Other Actions</u>.  Submission of a matter to arbitration shall be a condition precedent to any right to institute a proceeding at law or in equity concerning such matter, except for injunctive or other provisional relief pending the arbitration of a matter subject to arbitration pursuant to this Agreement.

## ARTICLE XIII

### MISCELLANEOUS PROVISIONS

Section 13.01.   <u>Headings</u>.  Headings used herein are not a part of this Agreement and shall not affect the terms hereof.

Section 13.02.   <u>Notices</u>.  All notices and communications hereunder shall be in writing and shall be deemed given if delivered personally or sent by overnight delivery service (providing for proof of delivery).  All notices or communications with SCOR Re under this Agreement shall be directed to:

SCOR Reinsurance Company
Two World Trade Center
New York, New York  10048-0178
Attention:  General Counsel

with copies to:

Sullivan & Cromwell
125 Broad Street
New York, New York  10004
Attention:  Allan M. Chapin

All notices and communications with Allstate under this Agreement shall be directed to:

Allstate Insurance Company
2775 Sanders Road
Northbrook, IL  60062-6127
Attention: General Counsel

with copies to:

LeBoeuf, Lamb, Greene & MacRae, L.L.P.
125 West 55th Street
New York, New York  10019
Attn:  Peter R. O'Flinn

Section 13.03.  <u>Severability</u>.  If any term or provision of this Agreement shall be held void, illegal or unenforceable, the validity of the remaining portions or provisions shall not be affected thereby.

Section 13.04.  <u>Successors and Assigns</u>.  This Agreement may not be assigned by either party without the prior written consent of the other.  The provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns as permitted herein.

Section 13.05.  <u>No Third Party Beneficiaries</u>.  Except as otherwise specifically provided for in Article XI of this Agreement, nothing in this Agreement is intended or shall be construed to give any person, other than the parties hereto, their successors and permitted assigns, any legal or equitable right, remedy or claim under or in respect of this Agreement or any provision contained herein, and SCOR Re shall not be directly liable hereunder to any reinsured under any Reinsurance Contract unless and until the Reinsurance Contract is novated in accordance with Article II hereof.

Section 13.06.  <u>Interpretation</u>.  For purposes of this Agreement, the words "hereof," "herein," "hereby" and other words of similar import refer to this Agreement as a whole unless otherwise indicated.  Whenever the words "include", "includes", or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation". Whenever the singular is used herein, the same shall include the plural, and whenever the plural is used herein, the same shall include the singular, where appropriate.

Section 13.07.  <u>Execution in Counterparts</u>.  This Agreement may be executed by the parties hereto in any number of counterparts and by each of the parties hereto in separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 13.08.  <u>Amendments; Entire Agreement</u>.  This Agreement may be amended only by written agreement of the parties.  This Agreement, together with the Purchase Agreement and the Ancillary Agreements, supersedes all prior discussions and written and oral agreements and constitutes the sole and

-16-

delivered, shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

      Section 13.08.  <u>Amendments; Entire Agreement</u>.  This Agreement may be amended only by written agreement of the parties.  This Agreement, together with the Purchase Agreement and the Ancillary Agreements, supersedes all prior discussions and written and oral agreements and constitutes the sole and entire agreement between the parties with respect to the subject matter hereof.

      Section 13.09.  <u>GOVERNING LAW</u>.  THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAWS THEREOF.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

ALLSTATE INSURANCE COMPANY

By: _____
    Name:  James P. Zils
    Title: Vice President and
          Treasurer

SCOR REINSURANCE COMPANY

By: _____
    Name:
    Title:

-17-

delivered, shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 13.08.   <u>Amendments; Entire Agreement</u>.  This Agreement may be amended only by written agreement of the parties.  This Agreement, together with the Purchase Agreement and the Ancillary Agreements, supersedes all prior discussions and written and oral agreements and constitutes the sole and entire agreement between the parties with respect to the subject matter hereof.

Section 13.09.   <u>GOVERNING LAW</u>.  THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAWS THEREOF.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

ALLSTATE INSURANCE COMPANY


By: _____
    Name:  James P. Zils
    Title: Vice President and
           Treasurer


SCOR REINSURANCE COMPANY


By: _____
    Name: Jerome Karter
    Title: President & Chief Executive
           Officer