IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY and CONTINENTAL INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>COMMERCIAL RISK RE-INSURANCE COMPANY, COMMERCIAL RISK REINSURANCE COMPANY LIMITED, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, GENERAL SECURITY NATIONAL INSURANCE COMPANY, GIE COLUMBUS, SCOR, and SCOR REINSURANCE COMPANY,<br><br>Defendants. | Case No. 07-6912<br><br>Judge Harry D. Leinenweber<br><br>Magistrate Judge Arlander Keys |

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' APPLICATION TO STAY**

Plaintiffs ("CNA") submit the following memorandum of law in response to Defendants' ("SCOR") Application to Stay in Favor of Arbitration.

**INTRODUCTION**

In 2006, CNA and SCOR entered into an agreement (the Commutation and Release Agreement" or "CRA") that terminated a number of reinsurance contracts SCOR had issued to CNA. By early 2007, CNA and SCOR disputed the scope of the CRA. CNA claimed that reinsurance contracts issued by third parties including Allstate Insurance Company ("Allstate") and Unity Fire and General Insurance Company ("Unity Fire") were not terminated by the CRA, and SCOR contended that they were. Consequently, CNA brought this action, asking this Court to declare that the CRA does not extend to the Allstate and Unity Fire reinsurance contracts. In bringing this action, CNA followed the plain language of the CRA,

which designated the state and federal courts of Illinois as the "exclusive" forum for resolution of disputes between the parties concerning the CRA.

SCOR has moved to stay this action in favor of arbitration. For that motion to have any legitimacy, SCOR must show: (a) that the parties' dispute is covered by a written agreement to arbitrate, and (b) that both parties are subject to that arbitration agreement. SCOR fails on both fronts. The written agreement to arbitrate touted by SCOR is a narrow one that covers only disputes over interpretation of specific Unity Fire facultative reinsurance contracts; it has *nothing* to do with this dispute over the scope of the CRA. As this basic disconnect dooms its motion, SCOR ignores the problem, instead concentrating on its claim to be a "successor" to a party to the arbitration agreement. Even if this claim were credited, however, it cannot transform a dispute over the CRA into a dispute over interpretation of those specific facultative contracts. In any event, the "successorship" claim is contradicted by the exhibits to SCOR's brief, which establish that SCOR is simply a type of reinsurer[1] of Unity Fire and Allstate with respect to the subject contracts with CNA. A reinsurer is not a successor. Finally, SCOR's argument proves too much. For if the facultative contracts under which it seeks to arbitrate have been commuted, as SCOR contends, then there is no "agreement in writing for ... arbitration" as required by 9 U.S.C. § 3. In sum, SCOR's motion not only fails to support a stay, but undermines its substantive case. This Court should deny the motion and proceed to the merits.

## FACTUAL SUMMARY

In December 2006, CNA and SCOR entered into the CRA, which released the parties from their obligations under "Reinsurance Agreements." The CRA defined "Reinsurance

---

[1] Actually, a retrocessionaire. A retrocessionaire is a company that reinsures a reinsurer. Just as reinsurance is insurance of insurance, so retrocession is simply reinsurance of reinsurance. *See John Hancock Property & Cas. Ins. Co. v Universale Reinsurance Co., Ltd.*, 147 F.R.D. 40, 42 (S.D.N.Y. 1993).

Agreements" as reinsurance contracts between the Parties, under which "Reinsurer" assumes losses ceded by "CNA" to Reinsurer, subject to certain exceptions. (CRA[2] at Art. 1(g).)

The precise identities of "CNA" and "Reinsurer" were carefully negotiated, since only contracts "between" them were subject to release. (*See id.* at Art. 1(g).) "CNA" was defined as Continental Casualty Company and Continental Insurance Company and their direct or indirect subsidiaries, with certain exceptions. (*Id.* at Art. 1(a).) "Reinsurer" was defined as:

> SCOR Reinsurance Company, General Security National Insurance Company (f/k/a Sorema North America Reinsurance Company); General Security Indemnity Company of Arizona; Commercial Risk Re-Insurance Company, Commercial Risk Reinsurance Company Limited, GIE COLUMBUS, SCOR, Paris, France, including any of its direct or indirect non-life insurance and reinsurance subsidiaries and affiliates, including but not limited to SCOR Global P&C, but excluding Anglo-French Insurance Company, LTD., SAI-SOCIETA ASSICURATRICE INDUSTRIALE, (UK) and any of their subsidiaries.

(*Id.* at Art. 1(h).) Neither Allstate nor Unity Fire is included in this definition (*see id.* at 2-3). As SCOR admits, neither Allstate nor Unity Fire was a direct or indirect subsidiary of SCOR as of the execution date of the CRA (SCOR's Answer at ¶ 31), or was a signatory thereto (*id.* at ¶ 32).

The definitions of "CNA" and "SCOR" do not include former subsidiaries, with one exception. "CNA" is defined to include Continental Casualty Company's authority to act for "its former subsidiary Continental National Indemnity Company...." (*Id.* at Art. 1(a).) Thus, when the parties meant to include former subsidiaries in the CRA, they said so.

The parties also addressed the extent to which prior negotiations or representation should be considered in interpreting the CRA:

> This Commutation & Release Agreement shall constitute the final, complete and entire agreement between the parties as respects its subject matter, and supersedes and replaces any prior oral or written understandings of the Parties. This Commutation & Release Agreement

---

[2] A copy of the CRA was filed with CNA's Complaint.

> may not be amended except by written amendment executed by each of the Parties.
>
>                                 \*      \*      \*
>
> This Commutation & Release Agreement supersedes any and all other negotiations, discussions, promises, commitments, agreements and understandings, whether oral or written, express or implied, or made before or contemporaneous with the execution of this Commutation & Release Agreement, between the parties with respect to the subject matter[.] All such negotiations, discussions, promises, commitments, agreements, and understandings are deemed terminated or otherwise extinguished.

(CRA at Art. 7 (1) and (3).) Furthermore, each party "acknowledge[d] and agree[d] that it has not relied upon any statement, warranty or representation of the other Party, other than those statements, warranties, and representations expressly made in this Commutation & Release Agreement." (*Id.* at Art. 7(2).) Finally, the CRA set forth the governing law and choice of forum for disputes under the CRA:

> This Commutation & Release Agreement shall be interpreted, construed, enforced and otherwise governed in accordance with the laws of the State of Illinois, and the Parties hereby agree to submit to the exclusive jurisdiction of the state and federal courts in the State of Illinois, including consent to service of process, with respect to any dispute arising under or relating to this Commutation & Release Agreement.

(*Id.* at Art. 1(8).)

### SCOR's Shift In Stance and the Current Litigation

On January 17, 2007, SCOR's General Counsel sent an email to CNA respecting the CRA, claiming that the CRA was to include "certain contracts originally written by Allstate Re" but purportedly assumed by SCOR when it acquired Allstate's book of reinsurance business. (*See* Exhibit A to Declaration of Thomas D. Cunningham dated April 17, 2008 ("Cunningham Dec.").) Because "these contracts were never formally novated to SCOR Re," she explained, "the commutation agreement should have identified Allstate Re as a reinsurer." (*Id.*)

4

Accordingly, she suggested, the parties could now either "enter into a novation agreement between CNA and SCOR Re and Allstate with respect to the Allstate Re contracts" or "amend the Commutation Agreement to identify Allstate as a reinsurer."[3] (*Id.*)

SCOR's position respecting the scope of the CRA was news to CNA, which said as much in a January 31, 2007 reply. (Ex. B to Cunningham Dec.) SCOR's recognition that an amendment or novation was needed to include Allstate in the CRA shows its understanding that the Allstate contracts were not currently part of the CRA, CNA stated. Notwithstanding any retrocessional role that SCOR has with Allstate, CNA was not interested in commuting its contracts with Allstate. (*Id.*) CNA added that a similar issue had arisen with respect to two facultative reinsurance contracts issued by Unity Fire, which were also not part of the CRA, but which the broker had advised were commuted according to SCOR. Regardless of any retrocessional role that SCOR may have with Unity Fire, CNA was not interested in commuting its contracts with Unity Fire. (*Id.*) SCOR disagreed with CNA's position. This action ensued.

In its Complaint, CNA seeks a declaration respecting whether the CRA between CNA and SCOR encompasses reinsurance contracts issued by third parties, such as Allstate or Unity Fire. (*See* Complaint at ¶¶ 37-40.) In its Answer, SCOR raised numerous issues regarding the CRA, including whether the CRA was limited to reinsurance agreements between "Reinsurer" and "CNA" (SCOR's Answer at ¶¶ 28-29), what those terms meant (*id.* at ¶¶ 18-19), and whether certain contracts issued by Allstate and Unity Fire were included within the CRA

---

[3] Interestingly, neither of the options that SCOR previously thought necessary to encompass the Allstate or Unity Fire contracts within the CRA make an appearance in SCOR's papers in this action. Instead, SCOR baldly asserts that those contracts were commuted by the CRA, without reference to any novation or any amendment to the CRA. *See, e.g.*, SCOR's Answer at ¶ 34 ("SCOR admits that it claims that certain Allstate Re Contracts and certain Unity Fire contracts were terminated by the Commutation Agreement....These contracts were covered by the Commutation Agreement and [were] within the Parties' contemplation and intent.")

5

(*id.* at ¶¶ 31, 38-39). Of note, in one of its affirmative defenses SCOR simultaneously asserted both that "it is no longer liable to CNA upon the Unity Fire Contracts or the Allstate Re Contracts pursuant to the Commutation Agreement" and that "[t]he parties to this action do not have questions about their rights under the Commutation Agreement." (*Id.* at Fifth Aff. Def.)

**SCOR's Retrocessional Contracts with Allstate and Unity Fire**

In addition to its Answer, SCOR also filed an Application to Stay in Favor of Arbitration. In support of this application, SCOR submitted documentation respecting its arrangements with Unity Fire and Allstate: (a) a 1991 "Assumption Retrocession Agreement" ("Unity Fire Retrocession Agreement") between Unity Fire and a SCOR company called General Security Assurance Corporation of New York ("GSA"), and (b) a 1996 "Assumption and Indemnity Retrocession Agreement" ("Allstate Retrocession Agreement") between Allstate and SCOR Reinsurance Company ("SCOR Re") (*See* Exhibits A and D to Verne Aff.)

These agreements make for interesting reading. The Unity Fire Retrocession Agreement is a retrocession agreement under which GSA (the "Retrocessionaire") reinsures Unity Fire (the "Retrocedent"). (Unity Fire Retrocession Agreement at 1.) Notably, it expressly contemplates that GSA would secure novation endorsements from Unity Fire's cedents (such as CNA) to formally substitute GSA for Unity Fire. (*Id.* at Art. I, ¶¶ 3-5.) If this was not done, the Unity Fire Retrocession Agreement would operate as a 100% quota share retrocession of the underlying liabilities. (*Id.* at ¶ 6.) Thus, on its face, the Unity Fire Retrocession Agreement made GSA a 100% retrocessionaire, but contemplated that something more was required – a novation – for GSA to become the actual reinsurer of Unity Fire's cedents. SCOR offers no evidence that a such a novation agreement was ever sought or obtained from CNA.

6

The Allstate Retrocession Agreement is also a 100% quota share retrocession, under which "Allstate has agreed to retrocede to SCOR Re" certain liabilities. (Allstate Retrocession Agreement at 1 and Section 2.01.) It provides that Allstate will retain liability under non-novated contracts and shall be reinsured and indemnified by SCOR Re for such liabilities. (*Id.* at ¶ 2.05.) Thus, the Allstate Retrocession Agreement also demonstrates that SCOR is a retrocessionaire, and that absent a novation, Allstate retains liability for non-novated contracts subject to indemnification by SCOR. SCOR offers no evidence of a CNA novation.

**The Unitrin Preferred Arbitration**

Also in 2007, Continental Insurance Company ("CIC") demanded arbitration against Unitrin Preferred Insurance Company, f/k/a Unity Fire, under two facultative reinsurance contracts that Unity Fire issued to CIC in 1981 and 1982, respectively.[4] The demand did not address agreements with third parties, such as the CRA with SCOR. The DLA Piper firm answered on behalf of Unitrin Preferred and SCOR, and asserted that they intended to arbitrate the issue of the scope of the CRA. CNA denies that the issue is arbitrable.

## DISCUSSION

Invoking § 3 of the Federal Arbitration Act (9 U.S.C. § 3), SCOR argues that this Court should stay the case because CNA's claim in this litigation is subject to arbitration. (SCOR Mem. at 8.) Section 3 provides for a stay if the claim at issue is subject to arbitration under a written agreement to arbitrate. SCOR asserts that CNA's claim in this litigation is arbitrable under the Unity Fire facultative reinsurance contracts.

---

[4] According to an affidavit submitted by SCOR, Unity Fire was purchased by SCOR in 1990, changed its name, and then was sold to a third party in 2002. (*See* Verne Aff. at ¶¶ 7-8 and 18-19.) Thus, Unity Fire was not owned by SCOR either at the time the pertinent Unity Fire facultative reinsurance contracts were issued (1981 and 1982) or at the time the CRA was executed (2006).

7

The threshold question of whether parties agreed to arbitrate a matter – *i.e.*, the question of arbitrability – is an issue for judicial determination. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 83 (2002); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). Consequently, the issue for this Court is whether CNA's claim in this litigation falls within the arbitration clause in the Unity Fire facultative reinsurance contracts.

## I.  THE DISPUTE IN THIS LITIGATION IS NOT ARBITRABLE.

### A.  The Present Dispute Does Not Concern "Interpretation" of The Facultative Certificates and Therefore Falls Outside the Plain Language of the Narrow Arbitration Clause At Issue.

"Arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—**but only those disputes**—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc.*, 514 at 943 (emphasis added); *see also AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 640, 648-649 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit."). Thus, the duty to arbitrate is limited by the scope of the arbitration clause within the contract.

The dispute in this case concerns the scope of the CRA, a contract that contains no arbitration clause. On the contrary, the CRA calls for disputes thereunder to be resolved in the state or federal courts in Illinois. (CRA at Art. 7(8).) SCOR argues that CNA's Complaint is "a cleverly disguised action to enforce reinsurance agreements originally entered between CNA on the one hand and Allstate or Unity Fire on the other hand, which contain arbitration clauses." (SCOR Mem. at 2.)

CNA's Complaint seeks not to enforce a reinsurance contract; it seeks a declaration of rights under the CRA. But even indulging SCOR's "clever disguise" claim, the

8

arbitrability argument goes nowhere. For all its sound and fury respecting arbitrability, SCOR is curiously silent when it comes to the actual arbitration clause in the Unity Fire facultative reinsurance contracts. According to SCOR, this clause supposedly encompasses the parties' dispute respecting the CRA[5], but it actually reads as follows:

> Should an irreconcilable difference of opinion arise as to the interpretation of the Contract, it is hereby mutually agreed that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration....

This is a narrow arbitration clause that limits its application to disputes over "interpretation" of the facultative reinsurance contracts. But SCOR's "defense" – that the facultative reinsurance contracts are within the scope of the CRA and therefore were commuted and released – does not by any stretch of the imagination turn on an interpretation of the facultative reinsurance contracts. Neither CNA's Complaint nor SCOR's Application to Stay identifies any dispute respecting an interpretation of the facultative reinsurance contracts. The parties' dispute obviously concerns the CRA and its interpretation, not the Unity Fire facultative reinsurance contracts and their interpretation.

Courts have long recognized that arbitration clauses limited to "interpretation" disputes under contracts are narrow and must be construed accordingly. In *Associated Indem. Corp. v. Home Ins. Co.*, 19 F.3d 1432 (6th Cir. 1994), the court considered an arbitration clause identical to the Unity Fire clause. There, the plaintiff insurance company, AIC, sued its reinsurer, Home, seeking recovery of monies due under certain facultative reinsurance contracts. Those contracts contained an arbitration clause which provided that "[s]hould an irreconcilable

---

[5] SCOR also offers *nothing* respecting the alleged arbitration clause under the Allstate reinsurance contracts, other than the unsupported assertion that there is an arbitration clause. (*See* SCOR Mem. at 6-9). A case for arbitration must be "put in issue by facts, as distinguished from unsupported charges...." *Engineers Assoc. v. Sperry Gyroscope Co.*, 251 F.2d 133, 137 (2d Cir. 1957) (citation omitted). SCOR has set forth no case for arbitration under the Allstate contracts.

9

difference of opinion arise as to the interpretation of the Contract, it is hereby mutually agreed that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration...." *Id.* at *1. Home moved to compel arbitration of the dispute. The district court denied the motion, holding that the arbitration clause was narrow and finding that Home had failed to identify any issue of interpretation of the facultative reinsurance contracts. The Sixth Circuit affirmed, observing that "[t]he liberal federal policy is not so broad that it compels the arbitration of issues beyond those agreed to by the parties." *Id.*

The same conclusion was reached in *Argonaut Ins. Co. v. Travelers Ins. Co.*, 744 N.Y.S.2d 24, 25 (N.Y. App. Div. 2002). In that case, an insurer (Travelers) billed its reinsurer (Argonaut) under facultative reinsurance contracts. Travelers submitted that the subject losses constituted a single occurrence under the definition of occurrence in the underlying policies reinsured by the facultative reinsurance contracts. Disagreeing, Argonaut filed suit. Travelers moved to stay the action and compel arbitration. The subject arbitration clause provided if "an irreconcilable difference of opinion arises as to the interpretation of this Contract," then such matter was to be submitted to arbitration. The court held that while the dispute might require the interpretation of the underlying insurance policies, it did not require the interpretation of the facultative reinsurance contracts. Consequently, the court concluded, the dispute was not within the scope of the arbitration clause. *Id.* Other courts have reached the same general conclusion: arbitration clauses referring to "interpretation" disputes are narrow and are to be interpreted accordingly.[6] *E.g., Coady v. Ashcraft & Gebel*, 223 F.3d 1, 10 (1st Cir. 2000) ("By its plain language, the arbitration clause is limited to ambiguities and questions of interpretation.")[7]

---

[6] Oddly, SCOR's affiant mis-describes the Unity Fire arbitration clause as "broad." Verne Aff. at ¶ 34.
[7] *See also New Hampshire Ins. Co. v. Canali Reinsurance Co.*, 2004 WL 769775 (S.D.N.Y. Apr. 12, 2004) ("Read properly..., [this] arbitration clause,... clearly covers only a specific category of disputes – ones arising out of the interpretation of the Reinsurance Agreement."); *American Special Risk Ins. v.*

These cases gut SCOR's argument. The Unity Fire arbitration clause is narrow, restricted to disputes involving "interpretation" of the Unity Fire facultative reinsurance contracts. Yet neither CNA's claim nor SCOR's defense involves interpretation of the facultative reinsurance contracts; they involve only interpretation of the CRA, which lacks an arbitration clause. Accordingly, neither matter is arbitrable.

Perhaps in recognition of this fatal flaw, SCOR characterizes the present dispute as one over "enforceability" of the facultative reinsurance contracts. (SCOR Mem. at 7-9.) But SCOR's argument would make the parties' contractual obligation to arbitrate limitless, in derogation of the contracts' narrow arbitration clause. *C.f. American Special Risk Ins.*, 2005 WL 1620392 at *1 (defendant's argument that "enforcement" of reinsurance agreement is arbitrable dispute over "interpretation" of agreement "strips both words of their typical meaning.")

### B. SCOR's Documents Contradict Its Arguments

SCOR spills much ink over its alleged successor status to Unity Fire, claiming it can invoke the arbitration clause in those contracts to stay this litigation. But none of this assists SCOR, because none of it expands the narrow scope of the arbitration clause to which it supposedly succeeds.

Even if this impediment were ignored, SCOR's argument fails because the contracts attached to SCOR's application flatly contradict its successorship claim. Those contracts demonstrate that SCOR is a type of reinsurer (called retrocessionaire) of Unity Fire and Allstate. Indeed, the Unity Fire Retrocession Agreement expressly states that SCOR would have to secure novations from Unity Fire's ceding companies in order to be formally substituted for

---

*Factory Mut. Ins. Co.*, 2005 WL 1620392 *1 (Pa. Com. Pl. Jun. 30, 2005) (denying arbitration where defendant failed to identify an interpretative dispute over provision of the agreement between the parties); *Florida Dept. of Ins. v. World Re, Inc.*, 615 So. 2d 267, 270 (Fla. Dist. Ct. App. 1993) ("[T]he language is narrowly tailored to limit the arbitration requirement to disagreements regarding the interpretation of the contract, something that is not necessary to resolve the issues raised in the amended complaint.")

Unity Fire on those contracts. The Allstate Retrocession Agreement likewise speaks to SCOR's role as retrocessionaire under non-novated contracts. But SCOR has no novation from CNA, so it remains only a reinsurer in respect of Allstate's and Unity Fire's contracts with CNA. And a reinsurance arrangement is not a successorship arrangement; it is an indemnity arrangement. *C.f. Citizens Cas. Co. of N.Y. v. American Glass Co.*, 166 F.2d 91, 94-95 (7th Cir. 1948) ("The reinsurance contract is not one of insurance but simply one of indemnity....[I]n a reinsurance contract there is 'no privity of contract between the reinsurer and the person insured.'") (citation omitted). CNA remains a party to contracts with Unity Fire and Allstate unless and until it agrees to a novation otherwise, and Unity Fire's and Allstate's private contractual dealings with SCOR do not change that fact.

Finally, SCOR's own argument undermines its motion. Section 3 of the Federal Arbitration Act requires an "agreement in writing for ... arbitration." The arbitration clause that SCOR seeks to invoke is in the Unity Fire facultative contracts. But SCOR asserts those contracts were commuted and thus no longer exist. If SCOR's argument is to be believed, then there is no written arbitration agreement, and hence no grounds on which to invoke Section 3.

### C. The Present Dispute "Aris[es] Under or Relat[es] to" the Commutation Agreement, And Therefore Falls Within the "Exclusive Jurisdiction" of the State and Federal Courts in Illinois

The CRA contains the following forum selection clause:

> [T]he Parties hereby agree to submit to the exclusive jurisdiction of the state and federal courts in the State of Illinois, including consent to service of process, with respect to any dispute arising under or relating to this Commutation & Release Agreement.

(CRA, Art. 7, paragraph 8.) This provision means what it says, and plainly encompasses the present dispute. SCOR admits to a dispute respecting "how the Commutation [the CRA] should be interpreted or construed..." (Response to Req. to Admit No. 15), how the terms "CNA" and

12

"Reinsurer" are defined (SCOR's Answer at ¶¶18-19), and whether the CRA encompassed contracts with third parties such as Allstate and Unity Fire (SCOR's Answer at ¶¶ 28-29; 31, 38-39). Thus, there is a dispute "arising under or relating to" the CRA that falls within the parties' exclusive litigation forum selection clause.

In response, SCOR suggests that the parties "knew and accepted" that an arbitration panel could be asked to rule on the validity of the CRA, citing to Article 11 thereof. (SCOR Mem. at 2.) This argument collapses upon scrutiny. Article 11 provides that if any provisions of the CRA become null and void for any reason, the remaining provisions shall remain in full force and effect as permitted by law. (CRA at Art. 11.) But if certain key provisions are declared null and void by "any court, arbitration panel, or governmental or regulatory body," then the entire CRA should be null and void. (*Id.*) This clause does not call for arbitration of disputes under the CRA; it merely explains what happens in the event *any* tribunal declares provisions of the CRA null and void.

### III. SCOR'S OTHER ARGUMENTS FAIL.

#### A. There is An "Actual Controversy" Under the Declaratory Judgment Act.

In a strange procedural argument, SCOR states that while it "ha[s] not filed a motion with respect" to the Allstate contracts, it nonetheless believes that there is no "case on [sic] controversy" respecting those contracts because CNA has not yet demanded money under them. (*See* SCOR Mem. at 2 n.1.) Relegated to a footnote and devoid of supporting authority, this proposition is squarely contradicted by well-established case law. *See, e.g., Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937) (declaratory relief "may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process *or the payment of damages*.") (emphasis added).

13

The purpose of the Declaratory Judgment Act is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage has accrued." *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167 (7th Cir. 1969). While there must be "a substantial controversy between parties having adverse legal interests," *Nucor Corp. v. Aceros Y Maquilas De Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994) (citations omitted), the test is generally met if the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainties and controversy that created the issues. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987).

The present case readily meets this test. SCOR asserts that the Unity Fire and Allstate contracts were commuted under the CRA, and CNA denies that assertion. (*See* SCOR's Answer at ¶¶38-39.) SCOR has already denied claims submitted under the Unity Fire contracts, and indicated it would do the same under the Allstate contracts. One "does not have to await the consummation of threatened injury to obtain preventative relief." *Gov't Suppliers Consolidating Srvcs, Inc. v. Bayh*, 975 F.2d 1267, 1275 (7th Cir. 1992) (citation omitted). The conflict is substantial and immediate, and its resolution will settle disputed legal relationships and uncertainties. Moreover, the legal issue presented "is one the resolution of which will be essentially unaffected by further factual development." *Id.*

As the Seventh Circuit has explained, if a son is named as sole beneficiary in his father's will, and X fraudulently induces the father to tear up the will and name X as the sole beneficiary, "the son would not have to wait until his father's death in order to sue X for fraud, even though until then the son's interest must remain contingent since his father could always disinherit him." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 681 (7th Cir. 1992).

### B. A Stay Based On the Court's Inherent Powers Is Not Warranted.

As a last gasp, SCOR argues that even if this dispute is not arbitrable, the court should nonetheless stay this action in the interests of judicial economy and the Court's inherent power to control its docket. This argument goes nowhere. First, the dispute before this Court -- the proper scope of the CRA -- is not subject to arbitration. A court ruling on the issue would still be required, and a stay would merely delay the inevitable.

Second, it would be inefficient and illogical to ignore the CRA's clear mandate to litigate disputes arising under the CRA in favor of a multiplicity of individual arbitrations. The CRA encompasses scores of reinsurance contracts. To the extent those contracts contain arbitration clauses, SCOR's position would call for multiple arbitrations over the same issue – whether the CRA covered the particular contract at issue. This is a recipe for inconsistent rulings and a procedural quagmire that the parties contracted to avoid through a forum selection clause.

Third, the factors considered for deciding whether to grant such a stay have not been met here. In considering requests for a stay, courts look to possible damage, hardship, inequities to the parties, and the relationship of the stay to the fulfillment of judicial objectives. *See Wireless Spectrum Technologies, Inc. v. Motorola Corp.*, No. 00 C 0905, 2001 WL 32852, *1 (N.D. Ill. Jan. 21, 2001). SCOR demonstrates none of these factors here.

### CONCLUSION

For the reasons set forth herein, SCOR's application should be denied.

William M. Sneed  
Thomas D. Cunningham  
Serena B. Lee  
SIDLEY AUSTIN LLP  
One South Dearborn Street  
Chicago, IL 60603  
312-853-7000  

       / s / Thomas D. Cunningham

Attorneys for Plaintiffs Continental Casualty Company and Continental Insurance Company

15