```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION
```

CONTINENTAL CASUALTY COMPANY
and CONTINENTAL INSURANCE
COMPANY,

        Plaintiffs,

    v.

COMMERCIAL RISK RE-INSURANCE
COMPANY, COMMERCIAL RISK
REINSURANCE COMPANY LIMITED,
GENERAL SECURITY INDEMNITY
COMPANY OF ARIZONA, GENERAL
SECURITY NATIONAL INSURANCE
COMPANY, GIE COLUMBUS, SCOR,
and SCOR REINSURANCE COMPANY,

        Defendants.

Case No. 07 C 6912

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Defendants' Application for Partial Stay Pending Arbitration and Application to Appoint Umpire Pursuant to 9 U.S.C. § 5. For the reasons stated herein, both Applications are **denied**.

### I. BACKGROUND

Plaintiffs Continental Casualty Company and Continental Insurance Company (collectively, "CNA") and Defendants Commercial Risk Re-Insurance Company, Commercial Risk Reinsurance Company Limited, General Security Indemnity Company of Arizona, General

Security National Insurance Company, GIE Columbus, SCOR, and SCOR Reinsurance Company (collectively, "SCOR") were parties to several reinsurance agreements. Under a typical reinsurance arrangement, an insurance company transfers ("cedes") its risk on ceded policies to a reinsurer. *See Continental Cas. Co. v. American Nat. Ins. Co.,* 417 F.3d 727, 728 n.1 (7th Cir., 2005). In insurance parlance, a "commutation" is an agreement whereby existing reinsurance contracts are bought back by the insurance company and terminated, such that the reinsurer has no further liability to the insurance company under those contracts. *See id.*

On December 28, 2006, CNA and SCOR executed a Commutation & Release Agreement (the "Commutation Agreement") and thereby agreed to terminate certain reinsurance contracts between CNA and the "Reinsurer," which was defined to include various SCOR entities. *See* Commutation Agreement (Compl. Ex. 1), Art. 1(h). The parties agreed that the Commutation Agreement was to "be interpreted, construed, enforced and otherwise governed by and in accordance with the laws of the State of Illinois" and that they would "submit to the exclusive jurisdiction of the state and federal courts in the State of Illinois." *See id.*, at Art. 7 ¶ 8. The Commutation Agreement did not contain an arbitration provision. *See id.*

The underlying dispute between CNA and SCOR in this litigation concerns disagreement regarding whether the Commutation Agreement covers certain reinsurance contracts purchased by CNA from Allstate Insurance Company (the "Allstate Contracts") and from Unity Fire and General Insurance Company (n/k/a Unitrin Preferred Insurance Company) (the "Unity Fire Contracts"). On December 7, 2007, CNA filed a Complaint against SCOR, seeking a declaration concerning the scope of the Commutation Agreement pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. *See* Compl. ¶¶ 37-40. CNA alleges that the Commutation Agreement does not apply to the Unity Fire Contracts or the Allstate Contracts and that this Court has jurisdiction to issue such declaration pursuant to the Commutation Agreement's forum selection clause. *See id.* at ¶¶ 28-36. SCOR, on the other hand, argues that the Commutation Agreement settled and terminated the Unity Fire Contracts and Allstate Contracts and that this very dispute (specifically the Unity Fire Contracts) is the subject of pending arbitration between the parties.

On December 28, 2007, counsel for CNA demanded arbitration with Unity Fire regarding indemnification for certain claims pursuant to arbitration provisions in two Unity Fire Contracts. *See* Defs.' Appl. for Partial Stay, Ex. 1 (Dec. 28, 2007 Letter from T. Cunningham to Unitrin Preferred Insurance Company). On February 26, 2008, SCOR's counsel, representing the interests of

Unity Fire and SCOR, responded, appointing a party-arbitrator and advising that an award would be sought based on "release and commutation." *See* Defs.' Appl. for Partial Stay, Ex. 2 (Feb. 26, 2008 Letter from M. Kasdin to T. Cunningham). SCOR's counsel stated that SCOR "believes that an irreconcilable difference of opinion has arisen in respect to the enforceability" of the Unity Fire Contracts. *Id.* These arbitration proceedings, however, have not commenced, and an umpire has not been selected.

## II. **ANALYSIS**

### A. **Application for Partial Stay Pending Arbitration**

SCOR now moves for a stay pending arbitration proceedings. SCOR alleges that, in the 1990s, SCOR succeeded to the liabilities and contracts of Unity Fire and Allstate and thereby assumed the arbitration rights as a successor-in-interest on these contracts. *See* Defs.' Mem. of Law in Support of Appl. to Stay, at 4-6. According to SCOR, the Commutation Agreement terminated the Unity Fire Contracts and the Allstate Contracts. SCOR further contends that the arbitration, initiated by CNA before CNA's Complaint was filed, relates to the same Unity Fire business alleged in the Complaint and that an arbitrator, not the Court, should decide whether the Unity Contracts are still enforceable. *Id.* at 6-7. SCOR requests that the Court stay this case pending resolution of the arbitration pursuant to 9 U.S.C.

§ 3 or, alternatively, pursuant to the Court's inherent authority in the interests of judicial economy. *Id.* at 7-10.

In response, CNA asks that the Court deny both of SCOR's motions. CNA contends that the dispute in this case involves only the scope of the Commutation Agreement and is not subject to arbitration because parties to the Commutation Agreement never agreed to arbitrate. *See* Pls.' Resp. to Appl. to Stay, at 8-13. CNA argues that it demanded arbitration with Unity Fire under the narrow arbitration provision in the Unity Fire Contracts regarding the interpretation of those contracts, and its demand did not address agreements with third parties, such as the Commutation Agreement with SCOR. *See id.* at 7-11. Moreover, CNA contends that SCOR is merely a reinsurer (retrocessionaire), not a successor-in-interest to Unity Fire and thus lacks contractual rights to arbitrate under the Unity Fire Contracts. *See id.* at 6-7, 11-12.

The Federal Arbitration Act (the "FAA") requires courts presented with an issue that is arbitrable under the terms of a written arbitration agreement to stay legal proceedings of that dispute, pursuant to a party's request, while arbitration is conducted. *See* 9 U.S.C. § 3; *see also Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970-71 (7th Cir., 2007). The FAA thereby "establishes a national policy favoring arbitration when the parties contract for that mode of dispute

resolution." *Preston v. Ferrer*, 128 S.Ct. 978, 981 (2008). Before granting a stay, however, a district court must determine whether the parties have agreed to arbitration. *See Sims v. Montell Chrysler, Inc.,* 317 F.Supp.2d 838, 840 (N.D.Ill., 2004). Specifically, two conditions must be satisfied: "(1) the issue is one which is referable to arbitration under an agreement in writing for such arbitration, and (2) the party applying for the stay is not in default in proceeding with such arbitration." *Id.* (citing *C. Itoh & Co. (America) Inc. v. Jordan Intern. Co.*, 552 F.2d 1228, 1231 (7th Cir., 1977)). The Court must resolve any doubts about the scope of arbitrable issues in favor of arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983).

Although the FAA enunciates a liberal policy in favor of arbitration, the duty to arbitrate is limited by the scope of the specific arbitration agreement between the parties. *See Grundstad v. Ritt*, 106 F.3d 201, 205 n.5 (7th Cir., 1997) (noting that the policy "does not serve to extend the reach of an arbitration provision to parties who never agreed to arbitrate in the first place"). Whether the parties entered into a valid arbitration agreement and the issues that must be arbitrated are matters of contract for the Court to decide. *See R.J. O'Brien & Associates, Inc. v. Pipkin*, 64 F.3d 257, 260 (7th Cir., 1995)

(citing *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986)). According to the Supreme Court, "arbitration is simply a matter of contract between the parties; it is a way to resolve the disputes - but only those disputes - that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Consequently, a court may not expand the application of an arbitration agreement beyond its intended scope. *Pivoris v. TCF Financial Corp.*, No. 07 C 2673, 2007 WL 4355040, *3 (N.D.Ill., Dec. 7, 2007).

Accordingly, the Court must determine whether the dispute here falls within the scope of an agreement to arbitrate, thereby warranting a stay in this litigation. The threshold question is whether the parties contractually agreed to submit this issue to arbitration. SCOR argues that it assumed the right to arbitrate under the Unity Fire Contracts as a successor-in-interest to Unity Fire and that arbitration proceedings on this very issue were initiated by CNA before CNA filed its Complaint. CNA, on the other hand, contends that the dispute at issue here concerns the scope of the Commutation Agreement, namely whether the Unity Fire Contracts and the Allstate Contacts were terminated, and that the parties to the Commutation Agreement never agreed to arbitrate disputes regarding the interpretation of the Commutation Agreement. CNA further asserts that SCOR never

assumed the rights to arbitrate disputes under the Unity Fire Contracts.

The Court declines to order a stay in this case. CNA's claim, a request for a declaration of rights under the Commutation Agreement, does not fall within any enforceable agreement to arbitrate. *See Sims,* 317 F.Supp.2d at 840. The Commutation Agreement does not include an agreement to arbitrate; instead, it expressly designates the state and federal courts of Illinois as the "exclusive" forum for resolution of disputes between the parties. *See* Commutation Agreement, Art. 7 ¶ 8. Furthermore, the arbitration demanded by CNA pursuant to the written agreement in the Unity Fire Contracts concerns only the narrow issues regarding interpretation of two specific Unity Fire Contracts, not the scope of the Commutation Agreement. *See* Defs.' Appl. to Appoint Umpire, Ex. B (quoting, with added emphasis, the arbitration clause in the Unity Fire Contracts, "Should an irreconcilable difference of opinion arise as to the *interpretation of the Contract*, it is hereby mutually agreed that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration . . . "). The proposed arbitration proceedings, initiated by CNA, relate only to the interpretation of two specific Unity Fire Contracts. *See* Defs.' Appl. for Partial Stay, Ex. 1 (Dec. 28, 2007 Letter from T. Cunningham to Unitrin Preferred Insurance Company). Moreover,

these proceedings have not begun because CNA disputes whether SCOR has a contractual right to arbitrate.

Therefore, the Court finds that it would be improper to expand the application of the arbitration provision in the Unity Fire Contracts or to infer that an agreement to arbitrate the scope of the Commutation Agreement exists. *See Pivoris*, 2007 WL 4355040, at *3. A stay would retard unnecessarily the progress of the current litigation and would delay the determination of the scope of the Commutation Agreement, including whether the Unity Contracts were commuted, were commuted. Thus, the Court denies SCOR's request for a stay.

**B. Application to Appoint Umpire Pursuant to 9 U.S.C. § 5**

Next, SCOR requests that the Court enter an order appointing an umpire for the arbitration proceedings initiated by CNA under the Unity Fire Contracts. SCOR contends that: (1) it has the right to arbitrate as a successor-in-interest to Unity Fire, (2) but that the Unity Fire Contracts were terminated by the Commutation Agreement before CNA demanded arbitration, thus extinguishing Unity Fire's liability, and (3) an arbitration panel is the appropriate forum to decide these issues. *See* Defs.' Appl. to Appoint Umpire at 1-2. According to SCOR, after demanding arbitration, CNA has stalled and frustrated the arbitration process, thus necessitating the requested assistance from the Court. *Id.* at 7.

CNA, on the other hand, contends that SCOR's motion for the appointment of an umpire should be denied. As discussed above, CNA asserts that it demanded arbitration solely with Unity Fire under the Unity Fire Contracts and that SCOR does not have a contractual right to arbitrate the dispute. CNA argues that, before appointing an umpire, the Court must decide the issue of arbitrability, namely whether a written arbitration agreement between CNA and SCOR exists. *See* Pls.' Resp. to Motion to Appoint Umpire at 7-8. In addition, CNA points out that, even if SCOR assumed the arbitration rights of Unity Fire, if the Unity Fire Contracts were commuted, those arbitration rights were also terminated. *See id*.

Section 5 of the FAA provides that, upon a motion by either party to an arbitration agreement, the Court shall designate and appoint an umpire as the case so requires. *See* U.S.C. § 5. As discussed above, both the existence of an enforceable arbitration agreement between SCOR and CNA as well as the commutation of the Unity Contracts as a whole are disputed. Under these circumstances, the FAA requires the Court to try the issue before it proceeds to appoint an umpire. *See* U.S.C. § 4. As noted by the Supreme Court, "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT & T Technologies,* 475 U.S. at 648-49.

Here, although CNA initially demanded arbitration with Unity Fire, arbitration is not pending because, among other reasons, the parties dispute whether SCOR has a right to arbitrate and whether the Unity Fire Contracts, and its arbitration provisions, were terminated by the Commutation Agreement.  As discussed above, arbitration under the Unity Fire Contracts is not ongoing, and neither party has filed a motion to compel arbitration proceedings.  The Court, therefore, finds that appointing an umpire at this time, before determining whether the parties are required to arbitrate, would be premature.

## IV.  CONCLUSION

For the reasons stated herein, the Court **denies** SCOR's Application for Partial Stay Pending Arbitration and **denies** SCOR's Application to Appoint Umpire Pursuant to 9 U.S.C. § 5. **IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 4/16/2009